fiscal operations in behalf of the corporation in the only form possible under the circumstances, to wit, in the form of transcripts showing the details of such operations taken from the books of original entry. These reports were accepted by the corporation, and are not, even now, attacked or ·impeached. If this action could be maintained upon the meager facts alleged and proven, every stockholder in every corporation in the land might maintain a separate action for an accounting against every person having dealings involving an element of trust with the corporation. This might furnish a fine field of action for persons litigiously inclined, but would not conduce to the benefit of the corporations, or of their stockholders generally.

[5] Even if it might be assumed that the mere failure of the individual defendants to cause the corporation to keep proper books of account furnished a sufficient ground for a stockholder's action (which we do not hold), the question whether such books were in fact kept should have been determined upon the trial, because if it appeared that such books of account had been kept this would be no basis for an interlocutory decree. Proof to establish this fact was offered on the trial, but, on plaintiff's objection, was excluded. This was error even upon plaintiff's theory of the case, but we do not rest one decision simply upon this error, but upon the broader ground that the complaint fails to state, and the proofs fail to establish, facts sufficient to constitute a cause of action.

The judgment appealed from must therefore be reversed, and the complaint dismissed, with costs to the appellants in this court and the court below. All concur.

---

### BABB v. ELSINGER.

(Supreme Court, Appellate Term, First Department. April 14, 1914.)

1. CIVIL RIGHTS (§ 6*) — DISCRIMINATION — "SALOON" — "HOTEL" — "INN" — "RESTAURANT"—"EATING HOUSE"—"PLACE OF PUBLIC ACCOMMODATION."

Civil Rights Law (Consol. Laws, c. 6) § 40, providing that all persons shall be entitled to the full and equal accommodations, advantages, etc., of inns, restaurants, hotels, eating houses, etc., and all other places of public accommodation, subject only to the conditions and limitations established by law, and applicable alike to all citizens, applies to a "saloon" or place where intoxicating liquors are sold and consumed, since, while it is not a "hotel" or "inn," the distinctive feature of which is that travelers are furnished with lodging in addition to food and drink, nor a "restaurant" or "eating house" at which food is supplied, though the furnishing of drinks, spirituous or otherwise, is not necessarily excluded, it is of the same character, and is a "place of public accommodation," which under the rule of ejusdem generis applies to places of the same character or kind as those specifically enumerated, especially as a saloon or drinking bar contained in a hotel or restaurant is unquestionably covered by the statute.

[Ed. Note.—For other cases, see Civil Rights, Cent. Dig. § 9; Dec. Dig. § 6.*

For other definitions, see Words and Phrases, vol. 7, pp. 6310, 6311; vol. 8, p. 7794; vol. 4, pp. 3349, 3350; vol. 8, p. 7680; vol. 4, pp. 3624–3626; vol. 7, pp. 6180, 6181; vol. 8, p. 7789; vol. 3, p. 2313; vol. 8, p. 7647; vol. 6, pp. 5393, 5394.]

---

*For other cases see same topic & § NUMBER in Dec. &·Am. Digs: 1907 to date, & Rep'r Indexes

2. CIVIL RIGHTS (§ 4*)—DISCRIMINATION—"PUBLIC."

The word "public," though in one sense applying to places to which the general public is invited as distinguished from private places, means, as used in Civil Rights Law (Consol. Laws, c. 6), § 40, those places in which the public has an interest as affecting the safety, health, morals, and welfare of the community.

[Ed. Note.—For other cases, see Civil Rights, Cent. Dig. §§ 7–10; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 6, pp. 5771, 5772.]

3. EVIDENCE (§ 208*)—ADMISSIONS—ADMISSIONS OF RECORD.

Material admissions in a pleading can be taken advantage of as admissions of record against the party making them, though the pleading is not offered in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 713–725; Dec. Dig. § 208.*]

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by Aldwin C. Babb against Ralph Elsinger. From a judgment for plaintiff, defendant appeals. Affirmed.

The opinion of Justice Spiegelberg in the Municipal Court was as follows:

[1] The plaintiff, a colored man, obtained a verdict for the sum of $100 against the defendant for violation of section 40 of the Civil Rights Law (Consol. Laws, c. 64). That statute reads as follows: "All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of inns, restaurants, hotels, eating houses, bathhouses, barber shops, theaters, music halls, public conveyances on land and water, and all other places of public accommodation or amusement, subject only to the conditions and limitations established by law and applicable alike to all citizens."

Upon the rendering of the verdict the defendant moved to set aside the verdict and for a new trial. The verdict was amply supported by the evidence. The only point upon which the court reserved decision was the consideration of the question whether a saloon is within the purview of the statute. A saloon is not among the specially enumerated places, nor does it come within the definition of any of them. The terms "inn" and "hotel" are used synonymously. People v. Jones, 54 Barb. 311. The distinctive feature of a hotel and inn is that travelers are furnished with lodging in addition to food and drink. In a restaurant and eating house food is supplied, though the furnishing of drinks, spirituous or otherwise, is not necessarily excluded. The word "saloon," in the sense of a place where intoxicating liquors are sold and consumed, is of modern origin, and is used as such only in this country. Oxford English Dict. The use of the word "saloon" instead of "bar" or "drinking bar" has become general, and its meaning is now so well known that it induced a learned court to say that "it would be an impeachment of the intelligence of the average citizen of this state [state of Montana] to say that he does not know and appreciate the true significance of" the term "saloon." Schwanekamp v. Modern Woodmen of America, 44 Mont. 526, 531, 120 Pac. 806. It has been judicially held in this state that a drinking saloon is not an inn. People v. Jones, supra; Overseers of the Poor v. Warner, 3 Hill, 150.

I am, however, of the opinion that the term "places of public accommodation" includes a saloon. An analysis of the statute shows that it covers conveyances on land and water, all places of public accommodation, and all places of public amusement, and in addition thereto bathhouses and barber shops, which are sui generis, and not related to the other places enumerated. Bathhouses and barber shops are not mentioned in the first Civil Rights Act passed

in this state, viz., Laws of 1873, c. 186, nor in the succeeding one of 1881 (chapter 400). These places were for the first time incorporated in Laws of 1895, c. 1042, which is the statute now in force and incorporated in the Consolidated Laws. Some of the places of public accommodation, to wit, inns, restaurants, hotels, eating houses, and some of the places of public amusement, to wit, theaters and music halls, are specifically mentioned; but the enumeration of these particular places does not exclude others. The statute says all *other* places of public accommodation, thereby enlarging its scope and not restricting it to those enumerated. All places in a similar or like category with those named are included within the terms of the statute. This statute must be construed according to the rule of ejusdem generis, that is, where general words follow an enumeration of specific things, such general words refer to things of the same character or kind as are specifically enumerated. In the matter of Hermance, 71 N. Y. 481; State Board of Pharmacy v. Gasau, 195 N. Y. 197, 88 N. E. 55. What was the purpose of the Legislature in adding the words "and all other places of public accommodation" unless it meant to include such places? Is a place where liquors are sold not of a like character with one where liquors and food are sold? Is a restaurant a place of public accommodation and not a saloon?

[2] I am clearly of the opinion that a drinking saloon is a place of public accommodation. In one sense the word "public" applies to all places to which the general public is invited as distinguished from private places; but public in the sense as used in this and other statutes means those places in which the public has an interest as affecting the safety, health, morals, and welfare of the community, and it is for that reason that legislative interference with such places has been upheld. People v. King, 110 N. Y. 418, at page 423, 18 N. E. 245, 1 L. R. A. 293, 6 Am. St. Rep. 389; Aaron v. Ward, 203 N. Y. 351, at page 356, 96 N. E. 736, 38 L. R. A. (N. S.) 204; Commonwealth v. Muir, 38 Wkly. Notes Cas. (Pa.) 328. An apt description of places of public accommodation is given in Faulkner v. Solazzi, 79 Conn. 541, 65 Atl. 947, 9 L. R. A. (N. S.) 601, 9 Ann. Cas. 67, as follows: "The common law has long been familiar with forms of business regarded as, to use Lord Hale's oft-adopted phrase, 'affected with public interest' so as either to confer upon the state some power of regulation in the interest of the public, or to impose certain duties as owed to the individual members of the public, or both."

Drinking places have been, from time immemorial, subject to legislative control. Wharton, Law of Innkeepers, at page 2, states that laws regulating alehouses existed in the time of Ina, King of Wessex, in the year 688. Excise or other statutory laws have entirely controlled and regulated alehouses ever since the time of Magna Charta. Wharton, p. 9. Since the earliest times places where intoxicating liquors were sold were subject to restriction by the authorities, while none was imposed by the common law upon the establishment of inns, which were subject to control by the Legislature only upon the sale of certain kinds of liquor. Willcock, Laws of Inns, p. 2. In other words, while inns were free from legislative interference, saloons were not. In discussing the statute (St. 5 and 6 Edward VI, ch. 25), dealing with visitorial powers over alehouses, it is said in a note in Stephens v. Watson, Salk, 45: "This statute extends not to inns, for they are for lodging of travelers; but if an inn degenerate to an alehouse by suffering disorderly tippling, etc., it shall be deemed as such." And in Overseers of the Poor v. Warner, supra, 3 Hill, at page 157, it is said: "At common law, any person may erect an inn for the public accommodation, without a license; as the keeping of it is not a franchise, but a lawful trade, open to every citizen." If an inn is a place of public accommodation, why not a place where intoxicating liquors are sold in which the public has, from the earliest times, shown greater solicitude than in inns? It is of the greatest significance that in England the equivalent of the word "saloon" as used in this country is the word "public house." The Oxford English Dictionary gives the following definition of public house: "A house for the entertainment of any member of the community, in consideration of payment. (a) An inn or hostelry providing accommodation (food and lodging, or light refreshments) for travelers or members of the general public; usually licensed for the supply of ale, wines and spirits. Now commonly merged in 'b.' (b) In current restricted application: A house of

which the principal business is the sale of alcoholic liquors to be consumed on the premises; a tavern."

It may not be amiss to add that while in this country the term "tavern" is a synonym of inn and hotel (People v. Jones, supra), in England it signifies "a house in which persons are regaled with wines and other liquors, but not with the more substantial entertainment of the victualing house" (Willcock, Laws of Inns, p. 1; see, also, Oxford English Dict., sub. Tavern).

It is true in the only two cases which I was able to find where a similar question, as in this case, has arisen it was held that the term "saloon" was not included within the meaning of statutes containing similar provisions, as in our Civil Rights Law. Kellar v. Koerber, 61 Ohio St. 388, 55 N. E. 1002; Rhone v. Loomis, 74 Minn. 200, 77 N. W. 31. In the Ohio case the reason is squarely placed upon the theory that the liquor traffic is an evil which should be discouraged and restricted, and that the Civil Rights Act should not be construed as encouraging a traffic which the clearly defined policy of the state of Ohio discourages. In the Minnesota case the court by a bare majority seems to have adopted the same view. It is said, at page 203 of 74 Minn., page 32 of 77 N. W.: "All legislation on the liquor traffic is restrictive and repressive, and seems to proceed upon the theory that it is an evil, and should be restricted to the smallest practicable limits." I am not aware that such a theory has found lodgment in the policy of the state of New York. The other reasons set forth by the majority of the court in Rhone v. Loomis, supra, in my opinion, are neither persuasive nor logical, and are fully met in the two dissenting opinions. Section 40 of the Civil Rights Act is declaratory of the common law, which prohibited unjust discrimination to all citizens in all public places. Ferguson v. Geis, 82 Mich. 358, at page 365, 46 N. W. 718, 9 L. R. A. 589, 21 Am. St. Rep. 576. See, also, People v. King, supra, 110 N. Y. at page 427, 18 N. E. at page 248, 1 L. R. A. 293, 6 Am. St. Rep. 389, where the court says: "By the common law, innkeepers and common carriers are bound to furnish equal facilities to all."

The case of Burks v. Bosso, 180 N. Y. 341, 73 N. E. 58, 105 Am. St. Rep. 762, upon which the defendant places his main reliance, is in its reasoning not an authority for, but against, him. In that case the question for determination was whether a bootblack stand was a place of public accommodation. It was sought to include bootblack stands within the purview of the statute, for the reason that barber shops were specifically mentioned; but the court held that though there is a superficial resemblance between the occupation of a barber and that of a bootblack, barber shops are not in the same class with hotels and public conveyances, and would certainly not be regarded as included within the statute under the general phrase "and all other places of public accommodation." But are not saloons in the same class with hotels, inns, and restaurants? It is well known that hotels and restaurants usually contain saloons or drinking bars. If, therefore, the contention of the learned counsel for the defendant is correct, we would be confronted with the anomalous situation that a proprietor of a saloon may discriminate against a colored citizen, so long as it is detached from a restaurant or a hotel, but comes within the prohibition of the statute if the saloon is located in a restaurant or hotel. But even more significant is the language used by the court in the Burks Case, at page 345 of 180 N. Y., page 59 of 73 N. E. (105 Am. St. Rep. 762): "And if bootblacking stands are to be brought within the purview of the statute under the words 'and all other places of public accommodation' it will require no great stretch of the imagination to apply this statute to innumerable places and callings that have never been, and probably never will be, regarded as subject to legislative control or direction."

But no calling has been more subject to legislative control or direction than that of a saloon keeper. Nor is the case of Cecil v. Green, 161 Ill. 265, 43 N. E. 1105, 32 L. R. A. 566, applicable. In that case it was held that a soda fountain kept in a drug store was not a public place within the meaning of the statute, for the reason that "such places can be considered places of accommodation or amusement to no greater extent than a place where dry goods or clothing, boots and shoes, hats and caps, or groceries are dispensed." Sufficient, perhaps too much, has been said to show that, if any place, a saloon is a place of public accommodation within the scope of the Civil Rights Act.

[3] I have thus far assumed that the place occupied by the defendant was a saloon. The complaint, however, refers to it as a saloon and restaurant, and the allegations to that effect are admitted by the defendant. Material admissions in a pleading can be taken advantage of as admissions against the party making them (Cook v. Barr, 44 N. Y. 156; Pope v. Allis, 115 U. S. 363, 6 Sup. Ct. 69, 29 L. Ed. 393); and, although the answer was not offered in evidence at the trial, the allegations therein contained are admissible as admissions of record (Hoes v. Nagele, 28 App. Div. 374, 51 N. Y. Supp. 233). Of course, if the saloon conducted by the defendant was a portion of a restaurant, it admits of no doubt that the defendant violated the statute.

The motion to set aside the verdict and for a new trial is denied, and judgment will be entered on the verdict of the jury.

Argued before LEHMAN, PAGE, and BIJUR, JJ.

Abraham S. Gilbert, of New York City, for appellant.
Samuel Schwartzberg, of New York City, for respondent.

PER CURIAM. Judgment affirmed, with costs, upon opinion of Mr. Justice Speigelberg in the court below.

---

(84 Misc. Rep. 263)

PEOPLE ex rel. ROBIN v. HAYES, Warden of Penitentiary.

(Supreme Court, Special Term, New York County. February, 1914.)

DISCOVERY (§ 88*)—RIGHT TO REMEDY—INSPECTION OF DOCUMENTS.

Under Code Civ. Proc. § 803, as amended September 1, 1913 (Laws 1913, c. 86), the court may, in a proper case, on motion of a recent inmate of the penitentiary on Blackwell's Island, grant an order permitting an inspection of certain photographs, books, and documents in the possession of the warden of such institution.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. §§ 113, 114; Dec. Dig. § 88.*]

Proceedings by the People, on the relation of Joseph G. Robin, against Patrick Hayes, Warden of the Penitentiary, Blackwell's Island. Motion to permit a discovery and inspection of certain books and documents. Granted.

Robert D. Ireland, of New York City, for relator.
Archibald C. Watson, for respondent.

COHALAN, J. The relator, a recent inmate of the penitentiary on Blackwell's Island, now asks the court to permit a discovery and inspection of certain books and documents in the possession of the respondent, the warden of that institution. The application is a novel one, but I am convinced that there is authority to grant it. Section 803 of the Code of Civil Procedure, as amended September 1, 1913, so as to include the word "photograph," provides:

"A court of record, other than a justices' court in a city, has power to compel a party to an action pending therein, to produce and discover, or to give to the other party, an inspection and copy, or permission to take a copy or photograph, of a book, document, or other paper, or to make discovery of any article or property, in his possession or under his control, relating to the merits of the action, or of the defense therein."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes