BARBARA NESS, Appellant, v PAN AMERICAN WORLD AIRWAYS et al., Respondents.

Second Department, November 28, 1988

## APPEARANCES OF COUNSEL

*Auerbach, Lewittes & Plescia (Laura L. Spring* and *Paul M. Lewittes* on the brief), for appellant.

*Kramer, Levin, Nessen, Kamin & Frankel (Daniel A. Rizzi* and *Kenneth J. McCulloch* on the brief), for respondents.

## OPINION OF THE COURT

BALLETTA, J.

The dispositive issue in this case is whether the respondent Pan American WorldClub is a "place of public accommodation" within the meaning of Executive Law § 296 (2) (a) and § 292 (9). For the reasons set forth herein, we hold that it is not and that the order appealed from should be affirmed.

Pan American WorldClub (hereinafter WorldClub) is a travel program wholly owned and operated by Pan American World Airways (hereinafter Pan Am). It offers professional travel counselors and travel agents the opportunity to earn free air travel on Pan Am. The WorldClub program creates an incentive for travel agents to sell Pan Am air travel tickets by crediting agents for each sale and then awarding free airline tickets for the credits accumulated. Membership in WorldClub is limited solely to professional travel counselors and travel agents who are actually engaged in selling travel to the public and who are employed by selected travel agencies which are accredited by the International Air Transport Association (hereinafter IATA) or the Airline Reporting Corporation (hereinafter ARC). This limitation is prominently disclosed on the WorldClub membership application which is disseminated only to eligible travel agents.

In order to become a member of WorldClub, a travel agent who satisfies the membership criteria must complete a copy of

the WorldClub application form, and return it to WorldClub for approval and acceptance. All WorldClub membership applications must be countersigned by the owner/manager of the IATA or ARC-accredited agency which employs the applicant. WorldClub will not process a travel agent's application for membership unless it contains the requisite employer countersignature and authorization. An agent who is accepted as a member is then issued an identification card which must be presented at the airport when the agent checks in for his or her flight.

The WorldClub application form specifically provides that travel awards earned by WorldClub members "may be used by a Pan Am WorldClub member and spouse, if that member has accumulated enough points in any one quarter to earn two tickets". The point system of the program is divided into various levels requiring differing amounts of points depending upon the destination or type of service (e.g., first class versus coach flights). By earning an additional 50 points at each level, a travel agent is entitled to the identical award for his or her spouse. The point system chart reflects that if two unmarried persons were to obtain the same benefits as a married couple, an accumulation of a higher number of points would be necessary.

A January 1986 WorldClub "Note", a program newsletter which is distributed periodically to its members, specifically reiterated that WorldClub awards are "not transferable", and are to be used only by WorldClub members and their spouses, and that "[i]f you are traveling with a spouse, you should be prepared to present proof of marriage". It further indicated that "WorldClub membership is conditioned upon your compliance with all the terms and conditions contained in your membership application".

The plaintiff Barbara Ness has been a travel counselor since 1974 and is currently associated with Austin Travel in Oceanside, New York. In 1982 she applied for and was granted membership in WorldClub, and in 1983, 1984 and 1985, she obtained WorldClub award tickets on various occasions, traveling each time with a different individual who she listed as her "spouse". However, the plaintiff concedes that she has been a widow since 1981 and has no spouse.

Some time in February 1986 the plaintiff submitted documentation to receive two free round-trip tickets for herself and her son. She listed her son as her spouse on the documen-

tation. On March 10, 1986, she was notified that the request was refused as she had listed her son as her traveling companion. The plaintiff claims that on or about the same day she indicated to a Pan Am representative that she felt that she was being discriminated against and that she would seek to enforce her rights against Pan Am. Thereafter, by letter dated March 24, 1986, the plaintiff was notified by WorldClub that WorldClub would not "honor any requests for award issuance from [her] through September 30, 1986" because of her violation of the rules.

In July 1986 the plaintiff commenced the instant action. Her amended complaint listed four causes of action which generally accuse Pan Am and WorldClub of discriminating against her on the basis of her marital status as a widow in violation of Executive Law § 296 (2) (a) and Civil Rights Law § 40-c, of retaliating against her for threatening a discrimination suit in violation of Executive Law § 296 (7), and of engaging in discriminatory business practices in violation of Executive Law § 296 (13). She also requested an award of damages for emotional pain caused by the defendants' actions and attorneys' fees.

The Supreme Court granted the defendants' motion to dismiss the amended complaint for failure to state a cause of action.

■ While the New York State Division of Human Rights is generally the administrative agency charged with the investigation and remedying of discriminatory practices (see, Executive Law §§ 295, 297), the plaintiff was not required to exhaust her administrative remedies before commencing this action in the Supreme Court. Victims of discrimination are given a choice as to the forum in which they may seek relief (see, Matter of State Div. of Human Rights v Luppino, 35 AD2d 107, 110-111, affd 29 NY2d 558; Executive Law § 297 [9]).

■ We initially note that when deciding a motion under CPLR 3211 (a) (7), "the sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail" (Guggenheimer v Ginzburg, 43 NY2d 268, 275; accord, 219 Broadway Corp. v Alexander's, Inc., 46 NY2d 506). Assuming the factual allegations of the complaint to be true (see, Tobin v Grossman, 24 NY2d 609), it is clear that the plaintiff has failed to set forth a cause of action under either the Executive Law or the Civil Rights Law.

The keystone for all of the plaintiff's various discrimination claims is whether WorldClub is to be deemed "a place of public accommodation" within the meaning of Executive Law § 296 (2) (a) and § 292 (9).

Executive Law § 296 (2) (a) reads in relevant part as follows: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any *place of public accommodation, resort or amusement,* because of the race, creed, color, national origin, sex, or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof" (emphasis added).

Executive Law § 292 (9) provides that "[t]he term 'place of public accommodation, resort or amusement' shall include, except as hereinafter specified, all places included in the meaning of such terms as: inns, taverns, road houses, hotels, motels, whether conducted for the entertainment of transient guests or for the accommodation of those seeking health, recreation or rest, or restaurants, or eating houses, or any place where food is sold for consumption on the premises; buffets, saloons, barrooms, or any store, park or enclosure where spirituous or malt liquors are sold; ice cream parlors, confectionaries, soda fountains, and all stores where ice cream, ice and fruit preparations or their derivatives, or where beverages of any kind are retailed for consumption on the premises; wholesale and retail stores and establishments dealing with goods or services of any kind, dispensaries, clinics, hospitals, bath-houses, swimming pools, laundries and all other cleaning establishments, barber shops, beauty parlors, theatres, motion picture houses, airdromes, roof gardens, music halls, race courses, skating rinks, amusement and recreation parks, trailer camps, resort camps, fairs, bowling alleys, golf courses, gymnasiums, shooting galleries, billiard and pool parlors; garages, all public conveyances operated on land or water or in the air, as well as the stations and terminals thereof; travel or tour advisory services, agencies or bureaus; public halls and public elevators of buildings and structures occupied by two or more tenants, or by the owner and one or more tenants. Such term shall not include public libraries, kindergartens, primary and secondary schools, high schools, academies, colleges and universities, extension courses, and all educational institutions under the supervision of the regents of the state of New York; any such public library, kindergar-

ten, primary and secondary school, academy, college, university, professional school, extension course or other education facility, supported in whole or in part by public funds or by contributions solicited from the general public; or any institution, club or place of accommodation which is in its nature distinctly private".

The traditional common-law rule was that "a person engaged in a public calling, such as [an] innkeeper or common carrier, was held to be under a duty to the general public and was obliged to serve, without discrimination, all who sought service" *(Madden v Queens County Jockey Club,* 296 NY 249, 253; *see also, Jacobson v New York Racing Assn.,* 33 NY2d 144, 149; *see generally,* Lerman and Sanderson, *Discrimination in Access to Public Places: A Survey of State and Federal Public Accommodations Laws,* 7 NY U Rev L & Soc Change 215 [1978]; Avins, *What is a Place of "Public" Accommodation?,* 52 Marq L Rev 1 [1968]). This was due to the fact that "[f]or centuries it has been settled in all jurisdictions where the common law prevails, that the business of an innkeeper is of a *quasi* public character, invested with many privileges and burdened with correspondingly great responsibilities. * * * [H]e impliedly invites the public to his establishment [and] is bound * * * to accept as guests all proper persons so long as he has room for them" *(de Wolf v Ford,* 193 NY 397, 401).

However, it is now recognized that many other types of privately owned establishments are to some extent public, and that the civil rights laws were enacted in part to insure all citizens equal enjoyment of privileges of a quasi-public character. " 'Where' * * * 'one devotes his property to a use in which the public have an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created' " *(People v King,* 110 NY 418, 428, quoting from *Munn v Illinois,* 94 US 113, 126; *see also, Grannan v Westchester Racing Assn.,* 16 App Div 8, 13, *revd* 153 NY 449). As was stated in the early case of *Babb v Elsinger* (147 NYS 98, 100): "In one sense the word 'public' applies to all places to which the general public is invited as distinguished from private places; but public in the sense as used in this and other statutes means those places in which the public has an interest as affecting the safety, health, morals, and welfare of the community, and it is for that reason that legislative interference with such places has been upheld".

Thus, in *Gibbs v Arras Bros.* (222 NY 332) the court was called upon to interpret Civil Rights Law § 40 which provided that all persons "shall be entitled to the full and equal accommodations, advantages and privileges of any place of public accommodation, resort or amusement". These places were defined by the statute as including "any inn, tavern or hotel, whether conducted for the entertainment of transient guests, or for the accommodation of those seeking health, recreation or rest, any restaurant, eating house, public conveyance on land or water, bathhouse, barber-shop, theater and music hall". The court stated that:

"The classifications denote the character and purpose which the places deemed, within the legislative intention and enactment, of public accommodation, resort or amusement must possess. Those places include each of those utilities, facilities and agencies created and operated for the common advantage, aid and benefit of the people, the denial of which to any person would be a discriminatory obstruction or deprivation in achieving prosperity, health, development or happiness. The existing legislative classification is not based upon the existence of a license or franchise from the state to the proprietor of the place or to the place itself; nor is it based upon the accessibility of the place for the public * * * .

"All successful occupations and every kind of business satisfies wants or needs of citizens; but the legislature clearly had in mind in enacting this statute that it should apply only to those it selected and named and to such others, if any, devoted to the general advantage, comfort or benefit, and essential or directly auxiliary to the prosperity, health, development or happiness of the citizen" *(Gibbs v Arras Bros., supra,* at 336-337).

More recently, in *Matter of United States Power Squadrons v State Human Rights Appeal Bd.* (59 NY2d 401, *rearg dismissed* 60 NY2d 702), the Court of Appeals continued the traditional notion of "public accommodation" in construing Executive Law § 292 (9), set forth above. The court indicated that the language of the statute "states two concepts, the idea of public accommodation in the broad sense of providing conveniences and services to the public, and the idea of place" *(Matter of United States Power Squadrons v State Human Rights Appeal Bd., supra,* at 410).

In the *United States Power Squadrons* case, the Court of Appeals affirmed a determination that the United States

Power Squadrons organization and its local chapters were places of public accommodation within the meaning of Executive Law § 292 (9). The court wrote that the United States Power Squadrons' "widespread public activities to promote [its] goals and to solicit public interest and participation in its [boating] courses are * * * the equivalent of systematically offering a service or accommodation to the public" *(Matter of United States Power Squadrons v State Human Rights Appeal Bd., supra,* at 411). The court focused upon the "extensive educational programs" offered by the Power Squadrons "to a large segment of the public", including boating courses attended by some 70,000 people per year, participating in boat shows, preparing a television program on boating, making appearances at local schools, and giving boating, fishing and tide reports on the radio *(Matter of United States Power Squadrons v State Human Rights Appeal Bd., supra,* at 410-411).

Similarly, in *Matter of Castle Hill Beach Club v Arbury* (2 NY2d 596), a beach club was found to be a "place of public accommodation, resort or amusement" within the meaning of the statute since, *inter alia,* "[t]he patrons of the facilities * * * were not limited to any geographical area; were not limited to any occupational category; were not limited to any age group; were not limited as to number, other than the capacity of the facilities, and were not limited to any social or economic status" *(Matter of Castle Hill Beach Club v Arbury, supra,* at 604). In another case, the facilities of a fraternal organization became a "place of public accommodation" for the one night that they were used to stage a fashion show to which the general public was invited *(see, Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights,* 43 AD2d 807, *revd on other grounds* 35 NY2d 143). In a third case, an investment company trading in stocks and commodities was a place of public accommodation since it was "an establishment dealing in services to the public" *(see, Matter of Walston & Co. v New York City Commn. on Human Rights,* 41 AD2d 238, 241).

The one factor common to all of these cases is that the organization or facility was providing conveniences or services to the general public, which, as we have seen, is one of the characteristics identified by the Court of Appeals in the *United States Power Squadrons* case *(supra)* as being descriptive of the term "place of public accommodation". It becomes readily apparent, therefore, that WorldClub does not fall

within either the statutory definition or the traditional concept of a place of public accommodation. WorldClub does not provide any goods, conveniences or services to the general public, nor does it offer to provide any goods, conveniences or services to the general public. WorldClub was not designed to be used by the general public, nor was the general public solicited to use it. WorldClub is, plain and simple, an incentive program for travel agents, a marketing program, and not a place of public accommodation. It is not a place opened to serve the public.

WorldClub does not bear any resemblance to the truly public and quasi-public places which are listed as illustrative examples in Executive Law § 292 (9). Nor, as the plaintiff contends, is it a "travel or tour advisory service, agency or bureau" included within the statutory definition of "place of public accommodation". A travel agent has been described as "one who, in the interest of promoting the travel plans of a client, deals with carriers, plans an itinerary, arranges for hotel accommodations, guides and tours of each city and sets up the traveler's schedule" (*United Airlines v Lerner,* 87 Ill App 3d 801, 803, 43 Ill Dec 225, 410 NE2d 225, 227; *see also, Francis v Allen,* 54 Ariz 377, 96 P2d 277). WorldClub is simply a mechanism by which Pan Am rewards travel agents for placing their clients on Pan Am flights; it does not provide any travel or tour advisory services to the public. The mere fact that the ultimate purpose of WorldClub is to encourage the booking of Pan Am flights does not lessen the fact that WorldClub is not a place of public accommodation. Unlike any of the establishments listed in Executive Law § 292 (9), WorldClub does not provide either conveniences and/or services to the public.

Because WorldClub is not a place of public accommodation within the meaning of Executive Law § 292 (9), we need not concern ourselves with the question of whether WorldClub falls within the exclusion for "institution[s], club[s] or place[s] of accommodation which [are] in [their] nature distinctly private". Thus, the plaintiff's reliance upon *New York State Club Assn. v City of New York* (69 NY2d 211, *affd* 487 US —, 108 S Ct 2225) is misplaced.

Furthermore, since WorldClub is not a place of public accommodation within the meaning of the statute, it follows that there has been no statutory violation and that the

plaintiff's complaint fails to state a cause of action under the Executive Law or the Civil Rights Law.

Accordingly, the order appealed from should be affirmed.

LAWRENCE, J. P., WEINSTEIN and RUBIN, JJ., concur.

Ordered that the order of the Supreme Court, Nassau County, dated March 10, 1987, is affirmed, with costs.