OPINION OF THE COURT
 

 Simons, J.
 

 In separate proceedings, petitioners, dentists in private practice, have been found guilty of an unlawful discriminatory practice because they failed to treat patients who were known or suspected to be HIV positive. The question presented is whether private dental offices are "placets] of public accommodation” within the definition of the Human Rights Law and subject to its provisions (see, Executive Law § 292 [9]).
 

 In
 
 Cahill,
 
 complainant alleged that he went to petitioner’s office, without appointment, for treatment of a cracked tooth. He stated that the dental assistant told him the dentist would see him immediately but that when he informed the assistant that he had been exposed to AIDS and was awaiting test results to determine if he was HIV positive, he was told by her that the treatment would have to await the result of the test and that he would be treated only if the test result was negative. The complaint against Dr. Lasser and the Newburgh Dental Group was filed by a patient who had been treated by Dr. Lasser previously but who alleged that he refused to treat her after she became HIV positive.
 

 
 *19
 
 Following administrative proceedings, the charges against the dentists were sustained and complainants were awarded compensatory damages for mental anguish. The dentists petitioned for judicial review of those determinations pursuant to Executive Law § 298.
 

 The Appellate Division concluded that petitioners’ dental practices could not be considered places of public accommodation within the meaning of the Human Rights Law because "dental offices” are not listed in the statute (Executive Law § 292 [9]), and because the dental practice of each petitioner operated in privately owned premises and by "appointment-only.” Accordingly, it granted the petitions and annulled the determinations of the Commissioner. We granted the Commissioner’s motions for leave to appeal, and now reverse the judgments of the Appellate Division.
 

 The Human Rights Law (Executive Law art 15) provides that it shall be "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of
 
 any place of public accommodation,
 
 resort or amusement, because of the * * * disability* * * of any person * * * to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof’ (Executive Law § 296 [2] [a] [emphasis added]). The definition of the italicized phrase is set forth in Executive Law § 292 (9), which lists places which are and which are not places of public accommodation.
 
 [1]
 
 Inasmuch as the statute does not expressly cite "dental offices” within either the
 
 *20
 
 included or exempt categories, our task is to determine in which category such facilities fall.
 

 Analysis starts by recognizing that the provisions of the Human Rights Law must be liberally construed to accomplish the purposes of the statute (Executive Law § 300;
 
 see, Matter of United States Power Squadrons v State Human Rights Appeal Bd.,
 
 59 NY2d 401, 411-412,
 
 rearg dismissed
 
 60 NY2d 682, 702;
 
 City of Schenectady v State Div. of Human Rights,
 
 37 NY2d 421, 428,
 
 rearg denied
 
 38 NY2d 856). Those purposes, the Legislature has stated, are to ensure that every person in this State has "an equal opportunity to enjoy a full and productive life”, expressly citing the opportunity to obtain adequate health care as one of the protected benefits of a full and productive life
 
 (see,
 
 Executive Law § 290 [3]). As a general proposition, therefore, it can be said that the Legislature intended to include health care providers within the Human Rights Law. The narrower question is whether offices of dentists, sometimes colloquially referred to as "private”, are "placets] of public accommodation” within the meaning of the Human Rights Law.
 

 Petitioners assert three reasons why they are not. First, petitioners note that the statute does not expressly include dental offices in its list of public accommodations and they maintain that under those circumstances the doctrine of
 
 ex-pressio unius est exclusio alterius
 
 requires a finding that the Legislature must have intended such facilities to be excluded from the statutory definition. Next they contend that the phrase "wholesale and retail” modifies the phrase "stores and establishments dealing with goods or services of any kind” and that dental offices are not "wholesale or retail establishments.” Lastly, petitioners assert that the only statutory reference that
 
 might
 
 incorporate dental offices is "clinics,” but that they are
 
 *21
 
 not clinics because they are located in private premises and do not treat walk-in patients.
 

 The prefatory sentence of Executive Law § 292 (9) states that "[t]he term 'place of public accommodation, resort or amusement’
 
 shall include,
 
 except as hereinafter specified,
 
 all places included in the meaning of such terms
 
 as” (emphasis added). This is broad and inclusive language, and the statutory list that follows it is illustrative, not specific
 
 (see, Matter of United States Power Squadrons v State Human Rights Appeal Bd., supra,
 
 59 NY2d, at 409). Moreover, because we must determine whether dentists’ offices are "included in the meaning” of the enumerated places, the doctrine of
 
 expressio unius est exclusio alterius
 
 has no application. Indeed, we are guided in the opposite direction because the Legislature has repeatedly amended the statute to expand its scope. Significantly, the Legislature amended the statute in 1960 to delete a limiting phrase appearing in the earlier version
 
 (compare,
 
 L 1952, ch 285, § 4,
 
 with
 
 L 1960, ch 779;
 
 see also,
 
 L 1962, ch 370; L 1969, ch 388). This history provides a clear indication that the Legislature used the phrase place of public accommodation "in the broad sense of providing conveniences and services to the public” and that it intended that the definition of place of accommodation should be interpreted liberally
 
 (Matter of United States Power Squadrons v State Human Rights Appeal Bd., supra,
 
 59 NY2d, at 410).
 

 Petitioners contend, and the Appellate Division agreed, that the phrase "establishments dealing with goods or services of any kind” cannot be construed to include dental offices because that phrase is modified by "wholesale and retail” thus limiting the meaning of "establishments” to something akin to stores (citing
 
 Matter of Sattler v City of New York Commn. on Human Rights,
 
 180 AD2d 644,
 
 lv denied
 
 81 NY2d 701). The language of the statute is ambiguous at best and the ambiguity is unresolved by legislative history. We have previously noted that the statute generally applies to "establishments” of any kind, implicitly interpreting that phrase as separate from and not modified or limited by the phrase "wholesale and retail”
 
 (see, Matter of United States Power Squadrons v State Human Rights Appeal Bd., supra,
 
 59 NY2d, at 411). We adopt that interpretation here.
 

 Dentists’ offices come within this definition of places of public accommodation because they provide services to the public. Though they may be conducted on private premises and by appointment, such places are generally open to all comers.
 
 *22
 
 Patients may be drawn to the office by an advertisement or telephone book listing, upon referral by other health care providers, or, as in the case of Dr. Cahill’s patient, by a sign displayed on the premises.
 
 [2]
 
 Indeed, in the
 
 Cahill
 
 case, the complainant walked into the office as a new patient without an appointment and originally was accepted for treatment.
 
 [3]
 

 Nor are dentists’ offices one of the places of public accommodation exempt from the provisions of the statute. The narrow and restrictive language identifying such places and limiting the exemption stands in contrast to the expansive language identifying those included within the definition of a "place of public accommodation.” Section 292 (9) states that only those places that are "hereinafter specified” are
 
 not
 
 included in the statutory definition. It then identifies as exempt certain educational institutions and "any institution, club or place of accommodation which is in its nature distinctly private.” Thus, while the Legislature intended that the inclusive list be broadly construed, it specified that exemptions were to be narrowly construed.
 

 Petitioners do not claim that they are among the educational institutions specifically exempted by Executive Law § 292 (9) and to the extent they argue that their practices are places of accommodation that are "distinctly private,” the evidence in the records does not support those arguments.
 

 The hallmark of a "private” place within the meaning of the Human Rights Law is its selectivity or exclusivity, and persons seeking the benefit of the exemption have the burden of establishing that their place of accommodation is "distinctly” private (see,
 
 Matter of United States Power Squadrons v State Human Rights Appeal Bd., supra,
 
 59 NY2d, at 412;
 
 see also, Matter of Castle Hill Beach Club v Arbury,
 
 2 NY2d 596;
 
 see also,
 
 Executive Law § 292 [9], as amended by L 1994, ch 262).
 

 
 *23
 
 Petitioners have failed to sustain the burden of proving they are exempt. Dr. Cahill established only that the premises in which his office was located was privately owned and that patients were generally required to make appointments to be seen; Dr. Lasser offered no relevant evidence. Neither dentist offered evidence that his patient roster was selective or exclusive, or that his practice was not generally held open to the public.
 

 The construction of the statute we adopt advances the statutory policy of protecting the civil rights necessary to enjoy a full and productive life. To hold otherwise would impute to the Legislature approval of legal discrimination by dentists (and other health care providers) on the basis of disability, race, gender, or any other protected classifications. Finding a categorical exemption in this context would signify that the Legislature intended that persons with disabilities should be free from discrimination in such places as ice cream parlors and skating rinks, but that dental and medical providers could lawfully deny health care to them solely on the basis of their disability, a result wholly inconsistent with the purposes of the Human Rights Law.
 

 Examining the question from a broader perspective, Executive Law § 296 (2) (a) deems it unlawful discrimination if a place of public accommodation denies its accommodations to any person on the basis of "race, creed, color, national origin, sex, or disability or marital status.” No case has been drawn to our attention in which a private health care provider claimed that its practice was not a place of public accommodation within the meaning of the Human Rights Law until the advent of HIV and AIDS. Though it may be that a complaint was never before filed against a private health care provider, it is inconceivable that a dentist would challenge the application of the statute if a patient complained that she was denied dental treatment because she was a woman, a member of a distinct racial group, or had been disabled by the amputation of an extremity. Though we recognize that potentially contagious bloodborne conditions may raise specific concerns among the health care community, the statute does not discriminate between types of disabilities — the very essence of the Human Rights Law is that persons within the reach of the statute may not pick and choose those against whom they discriminate.
 

 Nor do we perceive any conflict between our interpretation of the statute and modern dental and medical practice. The National Institute for Occupational Safety and Health in col
 
 *24
 
 laboration with the Center for Infectious Diseases and Centers for Disease Control have published "Guidelines for the Prevention of Transmission of Human Immunodeficiency Virus and Hepatitis B Virus to Health-Care and Public-Safety Workers,” and all licensed health care workers in this State are required to use "universal precautions” in all situations in which there is potential for the transmission of viruses
 
 (see, e.g.,
 
 8 NYCRR 29.2 [a] [13] [member of a health care profession engages in unprofessional conduct by failing to use appropriate scientifically accepted infection prevention techniques]). Indeed, Drs. Cahill and Lasser both testified that they and their staffs routinely employed universal precautions. Moreover, both the American Dental Association and the American Medical Association take the position that it is unethical conduct to refuse to treat an HIV positive patient solely because of that diagnosis
 
 (see,
 
 ADA Principles of Ethics and Code of Professional Conduct, Principle § 1-A, Advisory Opinion [1996]; AMA Code of Medical Ethics, Ethical Opinion 9.131 [1992]). In sum, the health care professions are generally in accord with the Human Rights Law with respect to the issue of treatment of HIV positive patients — such persons may not be denied treatment solely because they have that disability.
 

 Our resolution of these matters does not interfere with a provider’s ability to prescribe treatment or refer patients elsewhere for treatment. They may do so for any legitimate, nondiscriminatory reason, subject only to the condition that if such reasons are suspect they may be tested under the usual rules
 
 (see, Matter of North Shore Univ. Hosp. v Rosa,
 
 86 NY2d 413, 419-420;
 
 see also, Matter of Laverack & Haines v New York State Div. of Human Rights,
 
 88 NY2d 734 [decided today];
 
 Matter of Pace Univ. v New York City Commn. on Human Rights, 85
 
 NY2d 125).
 

 Accordingly, in each case, the judgment of the Appellate Division should be reversed, with costs, and the matter remitted to that Court for consideration of issues raised but not considered on the appeal to that Court.
 

 Levine, J. (dissenting). In our view, the majority’s construction of the key Human Rights Law jurisdictional phrase, "place of public accommodation, resort or amusement” (Executive Law § 292 [9]), to cover, in words or substance, any provision of goods or services to any members of the public
 
 (see,
 
 majority opn, at 21), empties the phrase of any substantive content and will result in an explosive increase in the jurisdiction of the
 
 *25
 
 State Division of Human Rights.
 
 [1]
 
 There is no justification in either the language or legislative history of the statute or its amendments to support or compel this overly expansive interpretation.
 

 The majority does not dispute that, prior to the 1960 amendment to Executive Law § 292 (9)’s definition of a place of public accommodation, resort or amusement (L 1960, ch 779), a typical private dental practice would not have been considered a place of public accommodation, nor indeed would any other professional private practice as commonly conducted. This was so despite the presence in the statute of a liberal construction provision (Executive Law § 300). Prior to 1960, Executive Law § 292 (9) both defined and at the same time limited the meaning of a place of public accommodation by reference to "all places included in the meaning of such term as it appears in section forty of the civil rights law,” and by providing that "it is intended hereby to limit the procedures and jurisdiction of the commission [against discrimination] to such places” (see, L 1952, ch 285 [adding subdivision (9) of section 292]).
 

 In turn, Civil Rights Law § 40 defines a place of public accommodation "to include” a lengthy enumeration of specific kinds of establishments. Undeniably, that list of categories of such places was the product of a gradual expansion from the original roll of places of public accommodation — innkeepers, common carriers, theaters and other places of public amusement — contained in New York’s first Civil Rights Act of 1873 (see,
 
 Gibbs v Arras Bros.,
 
 222 NY 332, 335-336,
 
 rearg denied
 
 223 NY 559).
 

 Under Civil Rights Law § 40, all categories of public lodging are designated places of public accommodation, as are all places serving food and drink to the public, health care dispensaries, clinics and hospitals, and places providing public entertainment, education, recreation and athletics and sports activities. Most of the same facilities and establishments are now incorporated in the definition of a place of public accommodation in Executive Law § 292 (9). All share common characteristics, having roots in the common-law principle that certain callings, such as that of innkeeper or common carrier, have
 
 *26
 
 " 'a
 
 quasi
 
 public character’ ”
 
 (Ness v Pan Am. World Airways,
 
 142 AD2d 233, 238 [quoting
 
 de Wolf v Ford,
 
 193 NY 397, 401]), with concomitant privileges and obligations to serve the public nondiscriminately
 
 (see,
 
 Avins,
 
 What is a Place of "Public” Accommodation?,
 
 52 Marq L Rev 1, 4-6). All of the places on the statutory list are types of establishments the general public is without any exception invited to patronize and in which the public has an interest because they are " 'devoted to the general advantage, comfort or benefit’ ” of the citizenry
 
 (Ness v Pan Am. World Airways, supra,
 
 at 239 [quoting
 
 Gibbs v Arras Bros., supra,
 
 at 336-337]).
 

 The list of such quasi-public establishments has, of course, been legislatively expanded to reflect changing public attitudes as to what services are " 'essential or directly auxiliary to the prosperity, health, development or happiness of the citizen’ ”
 
 (id.,
 
 at 239 [quoting
 
 Gibbs v Arras Bros., supra,
 
 at 336-337]). However, the essential character of these places of public accommodation for purposes of civil rights legislation has remained the same. These establishments offer important amenities and hold themselves out as " 'facilities ostensibly open to the general public’ ”
 
 (Daniel v Paul,
 
 395 US 298, 307-308 [quoting HR Rep No. 914, 88th Cong, 1st Sess 18 in construing the public accommodation provisions of title II of the Civil Rights Act of 1964 (42 USC § 2000a
 
 et
 
 seq.)]). Thus, the Kansas Supreme Court included among places of public accommodation "those places of business which are held open to the general public and where members of the general public are invited to come for business purposes”
 
 (Seabourn v Coronado Area Counsel, Boy Scouts of Am.,
 
 257 Kan 178, 199, 891 P2d 385, 399).
 
 (See also, Delany v Central Val. Golf Club,
 
 28 NYS2d 932,
 
 affd
 
 263 App Div 710,
 
 affd on other grounds
 
 289 NY 577;
 
 Sellers v Philip’s Barber Shop,
 
 46 NJ 340, 345, 217 A2d 121, 123 [place of public accommodation is an "establishment which caters to the public or by advertising or other forms of invitation induces patronage generally”]; Lerman and Sanderson,
 
 Discrimination in Access to Public Places: A Survey of State and Federal Public Accommodations Laws,
 
 7 NYU Rev L & Soc Change 215, 242-243.)
 

 Although the professional private practice of dentistry, or medicine, is important to the public, traditionally it lacks that openness of access by the general public that has been an essential characteristic of a place of public accommodation. That explains why, among health providers, only dispensaries, clinics and hospitals are included in the statute as places of public
 
 *27
 
 accommodation. Thus, when Executive Law § 292 (9) defined a place of public accommodation, resort or amusement by reference to. the list of such places under Civil Rights Law § 40, counsel for the State Commission Against Discrimination opined that the office of "the privately practicing dentist, who may specialize or limit his practice in any way he sees fit,” is not a place of public accommodation, in contrast to a clinic or dispensary "which treats, if not
 
 all comers
 
 absolutely, at least all comers within an identifiable group” (State Commission Against Discrimination, 1959 Report of Progress, at 73).
 

 The majority here, in broadly construing Executive Law § 292 (9) to include as a place of public accommodation all occupations providing a service availed of by members of the public, has eliminated the "quasi-public character”
 
 (de Wolf v Ford,
 
 supra) traditionally and up to now generally considered inherent in the concept of a place of public accommodation. One can hardly conceive of any gainful enterprise that does not directly or indirectly serve members of the public. Thus, the majority has essentially written this jurisdictional prerequisite out of the statute and fashioned its own statute of general applicability. "By restricting anti-discrimination laws to places of 'public accommodation,’ the legislatures of the various states obviously did not intend to include all businesses since otherwise the statutes would have said so, as does the law of California now” (Avins,
 
 op. cit.,
 
 52 Marq L Rev, at 32). The majority has essentially replicated the California statute,
 
 [2]
 
 without the benefit of a legislative enactment.
 

 The majority purports to find the legislative basis for this drastically expansive substantive change in the commonly understood meaning of a place of public accommodation in the 1960 and 1962 amendments to Executive Law § 292 (9) (L 1960, ch 779; L 1962, ch 370;
 
 see,
 
 majority opn, at 21). To be sure, as the majority points out, the 1960 amendment had a liberalizing effect. In addition to transferring almost all of the listed types of establishments from Civil Rights Law § 40, it eliminated the restrictive language limiting the jurisdiction of the statute to just those categories of places of public accommodation. Yet, the 1960 amendment left intact the statutory catchall phrase in the definition of a place of public accommodation, resort or amusement: "all places included in the
 
 meaning of such
 
 terms” (L 1960, ch 779 [emphasis supplied]).
 

 
 *28
 
 Thus, while the 1960 amendment to Executive Law § 292 (9) removed strict literal limitations as to the places of "public accommodation, resort or amusement” subject to the law’s jurisdiction, the Legislature retained the basic concept of a place of public accommodation — jurisdiction was still limited to those "places” which fell within "the meaning of such terms,” that is, according to the common understanding of a place of public accommodation, resort or amusement. Surely, this does not evince any legislative intent to depart so significantly from the traditional concept of a place of public accommodation.
 

 Likewise, the 1962 amendment to Executive Law § 292 (9) does not support the majority’s extreme substantive change in the meaning of a place of public accommodation. That amendment added eight new specific categories of places of public accommodation, including motels, laundries, airline terminals and travel agencies. It also modified an already existing category, "retail stores and establishments,” by inserting thereafter the phrase "dealing with goods or services of any kind”
 
 [3]
 
 (L 1962, ch 370). Contrary to the majority’s interpretation, the Legislature by the latter modification did not intend to create a new, free-standing category of place of public accommodation consisting of " 'establishments dealing with goods or services of any kind’ ”
 
 (see,
 
 majority opn, at 21). First, prior to the 1962 amendment, the category in question undeniably read "retail stores and establishments,” set off by commas, as were each of the other listed types of places of public accommodation
 
 (see,
 
 L 1960, ch 779;
 
 cf.,
 
 Civil Rights Law § 40). To make any sense at all, "retail” had to modify both "stores” and "establishments.” The 1962 amendment merely added a further modifying phrase to that category. The insertion of "dealing with goods or services of any kind” was made in the same clause, without any additional punctuation, and there is no reason to believe that it was not intended to refer to both antecedents (i.e., retail stores
 
 and
 
 retail establishments) in that clause
 
 (see, Randall v Bailey,
 
 288 NY 280, 287; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 253, 254). Moreover, had the Legislature intended by this amendment to create a separate new category of "establishments dealing with goods and services of any kind” (as the majority suggests), adding in the same amendment such additional specific places of public accommodation as motels, laundries and travel agencies, would have been entirely
 
 *29
 
 superfluous, since each would have constituted a service establishment covered by the more general language of the majority’s interpretation of the amendment. The notion that a separate general category of establishments providing all kinds of goods and services was intended, is also contradicted by the legislative history of the 1962 amendment. In the Executive Program Bill memorandum in support of the amendment (Bill Jacket, L 1962, ch 370, at 13), the proposed legislation is described as amending the definition of a place of public accommodation "by expressly including the following within such definition:
 

 "(a) motels;
 

 "(b)
 
 those
 
 retail stores and establishments which deal with goods or services of any kind” (emphasis supplied).
 

 In short, there is simply no support in the language or legislative history of Executive Law § 292 (9) or its amendments for the majority’s all-encompassing interpretation of a place of public accommodation to include every person who provides a service to any member of the public. Although a place of public accommodation is not a static concept, it takes its essential meaning from well understood, traditional uses of the phrase and from the kinds of establishments specifically named in the statute. To the extent that any vagueness exists in the legislation, the
 
 ejusdem generis
 
 canon of construction is especially appropriate here in giving the statute certainty and predictability of application (see,
 
 People v Shapiro,
 
 50 NY2d 747, 764;
 
 People v Illardo,
 
 48 NY2d 408, 416;
 
 People v Bell,
 
 306 NY 110, 115; McKinney’s Cons Laws of NY, Book 1, Statutes § 239 [bj). The majority purports to recognize the applicability of
 
 ejusdem generis
 
 in describing the statutory list of specific categories of places of public accommodation as "illustrative” (majority opn, at 21). As we have shown, tradition and the itemized specific statutory categories point in the same direction, toward only those providers of important benefits and advantages at essentially public places which, "ostensibly,” are completely accessible to the general public
 
 (Daniel v Paul, supra,
 
 395 US, at 307-308). A private dental practice, where patients are customarily seen and treated "by appointment only,” does not share that common characteristic of the places of public accommodation listed in the statute. In fact, not one of the statutory categories of public accommodation establishments or facilities is helpfully "illustrative” in this case, as being analogous to a typical private dental practice.
 

 
 *30
 
 Finally, we are of the view that
 
 Matter of United States Power Squadrons v State Human Rights Appeal Bd.
 
 (59 NY2d 401), is not controlling and is tellingly distinguishable from the instant cases. Critical to the decision in
 
 Power Squadrons
 
 was the determination that "the principal function of the organization” was its "oifer[ing] courses in boat handling and safety * * * to approximately 70,000 people a year” (59 NY2d, at 410), and its widespread promotional activities "to solicit public interest and participation in its courses”
 
 {id.,
 
 at 411). Thus, the respondent organization in
 
 Power Squadrons
 
 offered valuable educational courses for a large clientele, and unquestionably held itself out as an enterprise
 
 ostensibly
 
 open indiscriminately to the general public
 
 (see, Daniel v Paul, supra).
 

 For all of the foregoing reasons, we would affirm the orders of annulment in the instant cases.
 

 Chief Judge Kaye and Judges Smith and Ciparick concur with Judge Simons; Judge Levine dissents and votes to affirm in a separate opinion in which Judges Titone and Bellacosa concur.
 

 In each case: Judgment reversed, etc.
 

 [1]
 

 . Executive Law § 292 (9) states: "The term 'place of public accommodation, resort or amusement’
 
 shall include,
 
 except as hereinafter specified, all places included in the meaning of such terms as: inns, taverns, road houses, hotels, motels, whether conducted for the entertainment of transient guests or for the accommodation of those seeking health, recreation or rest, or restaurants, or eating houses, or any place where food is sold for consumption on the premises; buffets, saloons, barrooms, or any store, park or enclosure where spirituous or malt liquors are sold, ice cream parlors, confectionaries, soda fountains and all stores where ice cream, ice and fruit preparations or their derivatives, or where beverages of any kind are retailed for consumption on the premises; wholesale and retail stores and establishments dealing with goods or services of any kind, dispensaries, clinics, hospitals, bath-houses, swimming pools, laundries and all other cleaning establishments, barber shops, beauty parlors, theatres, motion picture houses, airdromes, roof gardens, music halls, race courses, skating rinks, amusement and recreation parks, trailer camps, resort camps, fairs, bowling alleys, golf courses, gymnasiums, shooting galleries, billiard and pool parlors; garages, all public conveyances operated on land or water or in the air, as well as the stations and terminals thereof; travel or tour advisory services, agencies or bureaus; public halls and public elevators of buildings and structures oc
 
 *20
 
 cupied by two or more tenants, or by the owner and one or more tenants. Such term
 
 shall not include
 
 public libraries, kindergartens, primary and secondary schools, high schools, academies, colleges and universities, extension courses, and all educational institutions under the supervision of the regents of the state of New York; any such public library, kindergarten, primary and secondary school, academy, college, university, professional school, extension course or other education facility, supported in whole or in part by public funds or by contributions solicited from the general public; or any institution, club or place of accommodation which is in its nature distinctly private.” (Emphasis added.)
 

 In 1994, the Legislature amended this subdivision, narrowing and further defining the organizations that may be considered "distinctly private” and imposing on those who seek that exemption the burden of proving their distinctly private nature (L 1994, ch 262, § 1).
 

 [2]
 

 . The dissenter refers to an informal opinion of counsel contained in the 1959 Report of Progress of the Commission Against Discrimination (at 73) which stated that the office of a " 'privately practicing dentist, who may specialize or limit his practice in any way he sees fit’ ” is not a place of public accommodation (see, dissenting opn, at 27). The opinion interpreted a statute which has since been amended to broadly expand its applicability and it relied heavily on the distinctions between a profession and a business, a distinction less clear today than it was 40 years ago. Significantly, too, petitioners here do not claim that their practices were limited in any way.
 

 [3]
 

 . In light of our conclusion that dentists’ offices are generally places of public accommodation because they are "included in the meaning of * * * establishments dealing with goods or services of any kind” we need not consider whether they are included in the meaning of "clinics”.
 

 [1]
 

 . At the least, the majority’s holding clearly would make all of the practitioners of all of the professions places of public accommodation. These would include some 570,000 professionals licensed by the State Education Department (1994-1995 Ann Report of Office of Professions, State Educ Dept, at 18), plus some 164,000 attorneys registered to practice in the State (State of New York, Office of Court Administration).
 

 [2]
 

 . California Civil Code § 51 (providing for "full and equal accommodations, advantages, facilities, privileges, or services
 
 in all business establishments of every kind
 
 whatsoever” [emphasis supplied]).
 

 [3]
 

 . In 1969, the Legislature amended this category in the definition to include "wholesale”, as well as retail, stores and establishments (L 1969, ch 388).