[684 NYS2d 375]

CRYSTAL ALBERT, Appellant, v EZZAT M. SOLIMON, Respondent.

Fourth Department, December 31, 1998

APPEARANCES OF COUNSEL

*Nira T. Kermisch,* Rochester, for appellant.

*Brown & Tarantino,* Rochester (*Dara Pavia* and *Ann Campbell* of counsel), for respondent.

**OPINION OF THE COURT**

BOEHM, J.

Supreme Court properly granted defendant's motion to dismiss the complaint for failure to state a cause of action. The complaint alleges that "[p]laintiff * * * and her service dog were shown to an examination room by a nurse, and waited for the doctor." It is undisputed that plaintiff and her dog were in the examination room when defendant entered. The complaint further alleges that, when defendant entered the examination room, "he began screaming at Plaintiff at the top of his voice, regarding the dog's presence in his office and examination room."

Although the use of affidavits in a CPLR 3211 (a) (7) motion to dismiss a complaint has been limited by *Rovello v Orofino Realty Co.* (40 NY2d 633), affidavits may nevertheless be used under certain circumstances, even without converting the motion to one for summary judgment under CPLR 3212. This is particularly true where the plaintiff submits affidavits in opposing the motion. For example, an affidavit submitted by either the plaintiff or defendant may "establish conclusively that plaintiff has no cause of action" (*Rovello v Orofino Realty Co.,*

*supra,* at 636; *see, Marraccini v Bertelsmann Music Group,* 221 AD2d 95, 97, *lv denied* 89 NY2d 809; *Matter of Board of Educ. v State Educ. Dept.,* 116 AD2d 939, 941). Further, plaintiff has raised no objection to the use by defendant of an affidavit and excerpts of his deposition in the affidavit supporting his motion.

In her deposition, excerpts of which were incorporated in plaintiff's affidavit opposing defendant's motion, plaintiff testified that defendant shouted at them to get out of the examination room and in her affidavit she avers that defendant was screaming and shouting "regarding the dog *being in the room*" (emphasis added). It is undisputed that plaintiff ran out of the examination room, taking the dog with her, and drove away.

In his deposition, which is useful merely to amplify the occurrence, defendant testified that, when he entered the examination room, he saw plaintiff seated on a chair and he asked "what is this dog doing here?" The dog was in the middle of the examination room with "his mouth and his head on the examination table". Defendant testified that plaintiff then stood up very quickly and rushed out of the room.

■ The court properly dismissed the cause of action for negligent infliction of emotional distress. There is no reasonable view of the evidence that defendant's actions were such as to endanger the physical safety of plaintiff or to cause her physical harm (*see, Glendora v Gallicano,* 206 AD2d 456), and plaintiff's cause of action does not come within any recognizable exception to the foregoing rule (*see, Johnson v State of New York,* 37 NY2d 378, 381-382).

■ The court also properly dismissed the cause of action for intentional infliction of emotional distress because the conduct of defendant, viewed in the light most favorable to plaintiff, is not sufficiently outrageous in character and extreme in degree as to exceed all bounds of decency (*see, Freihofer v Hearst Corp.,* 65 NY2d 135, 143; *Murphy v American Home Prods. Corp.,* 58 NY2d 293, 303).

■ We conclude that the court also properly dismissed the cause of action alleging violation of Civil Rights Law § 47. Section 47 (1) of the Civil Rights Law provides that "[n]o person shall be denied admittance to and/or the equal use of and enjoyment of any public facility solely because said person is a person with a disability and is accompanied by a guide dog, hearing dog or service dog." The term "public facility" includes, but is not limited to, "all modes of public and private transportation, all forms of public and private housing accommodations

whether permanent or temporary, buildings to which the public is invited or permitted, including those maintained by the state or by any political subdivision thereof, all educational facilities and institutions, including those maintained by the state or by any political subdivision thereof, all places where food is offered for sale, all theatres, including both live playhouses and motion picture establishments and all other places of public accommodations, convenience, resort, entertainment, or business to which the general public or any classification of persons therefrom is *normally or customarily invited or permitted*" (Civil Rights Law § 47 [2] [emphasis added]).

The issue raised in this action is not whether a physician's office is a "public facility" within the meaning of Civil Rights Law § 47 but, rather, whether a physician's examination room is a "public facility". We disagree with the dissent's conclusion that the complaint can be read to allege "that defendant demanded that the dog leave not only the examination room, but the entire office." Plaintiff and her dog were not barred from the office. The incident occurred entirely in the examination room and, even if we accept for purposes of this CPLR 3211 motion that defendant's conduct was rude and obnoxious, such conduct was limited to the dog's presence *in the examination room.*

We find persuasive the analysis in *Perino v St. Vincent's Med. Ctr.* (132 Misc 2d 20), the only reported decision that discusses Civil Rights Law § 47. There, Supreme Court held that a blind person was not entitled to bring his guide dog into a hospital delivery room during the birth of his child. The court's rationale was that the delivery room, as well as the labor room and maternity ward, are not public facilities or places where the general public is normally invited or permitted because *social custom and practice,* as well as reasonable health measures, dictate that they be restricted (*see, Perino v St. Vincent's Med. Ctr., supra,* at 21-22). The court noted that, while the hallways and cafeteria or snack bar of a hospital may be considered public places (*see, e.g., United States v Medical Socy.,* 298 F Supp 145, 152; *People v Ennis,* 45 NYS2d 446, 448), the same may not be said for other portions of the hospital where obstetrical or surgical procedures are carried out (*see, Perino v St. Vincent's Med. Ctr., supra,* at 21-22, citing *Hopwood v City of Pittsburgh,* 152 Pa Super 398, 33 A2d 658, 660). The court stated that dogs are foreign to a delivery room and "the presence of the dog would present an unacceptable danger to the expectant mother and to the physicians and nurses in

attendance \* \* \* The restrictions against the guide dog's presence are designed to prevent any dangers which may be caused thereby" (*Perino v St. Vincent's Med. Ctr.*, *supra*, at 23). That same concern is not present in *Matter of Cahill v Rosa* (89 NY2d 14), on which the dissent places so much reliance.

As the decision in *Perino* indicates, a single building may have both a private facility and a public facility under the same roof. While the waiting room in a physician's office may be regarded as a public place in which the general public is normally invited or permitted to enter, the same may not be said of those areas of a physician's office where physical examinations are conducted. An examination room is restricted to the patient, the physician and the physician's staff. Not only are there serious concerns regarding a patient's privacy but the presence of a dog, even a service dog, in an examination room also raises strong considerations of hygiene and sanitation.

There are considerations of the physician's safety, as well. Plaintiff went to see defendant to be examined regarding pain in her hips and legs. An orthopedic examination by necessity requires the proximity of the doctor to the patient and the physical movement of a patient's limbs. Such movements may produce an element of pain and a physical or vocal reaction from the patient. There is an understandable concern regarding the response of a dog to his mistress's expression of pain or discomfort. The presence of a dog during the examination presents a potential and unacceptable danger to the physician and any nursing staff in attendance. The foregoing concerns are neither "speculative" nor ephemeral and may not be casually dismissed as "specters", as the dissent does; they are based upon a judgment derived from common human experience (*see, Shaw v Tague*, 257 NY 193). There are sound policy reasons for the view that plaintiff's right to bring a service dog into a "public facility" was never intended to extend into a physician's examination room.

The dissent's reliance on the Executive Law and *Matter of Cahill v Rosa* (*supra*) is misplaced. In *Cahill*, the question presented was whether a private dental office is a "place of public accommodation" within the meaning of the Human Rights Law (Executive Law § 292 [9]; *see, Matter of Cahill v Rosa, supra*, at 18). The Court of Appeals construed the statute and the definition of "place of public accommodation" to be inclusive enough to protect the right of persons who are HIV positive to be treated by a dentist in his dental office (*Matter of Cahill v Rosa, supra*, at 21).

By contrast, the question presented here is whether an orthopedic physician's examination room is a "public facility" within the meaning of Civil Rights Law § 47. We disagree with the dissent that we may look to the definitions in Executive Law § 292 (9) and section 40 of the Civil Rights Law. Had the Legislature intended to apply the definitions found in Civil Rights Law § 40 or Executive Law § 292 (9) in construing Civil Rights Law § 47, it could easily have incorporated them in Civil Rights Law § 47 or made specific reference to the definitions in section 40 of the Civil Rights Law and section 292 (9) of the Executive Law. For example, the Legislature defined the term "disability", for purposes of construing Civil Rights Law article 4-B, as having the same meaning as that found in Executive Law § 292 (21) (*see*, Civil Rights Law § 47-b [5]). Inasmuch as Civil Rights Law § 47 (2) contains its own definition of the "public facilities" to which it applies, it is unnecessary to refer to the definitions found in other statutes, as the dissent has done. Further, nothing in the legislative history of section 47 suggests that the definition of the term "public facility" may be found in section 40 of the Civil Rights Law, which prohibits discrimination in "places of public accommodations, resort or amusement", and, for the same reason, neither should the Executive Law be looked to for the definition. Additionally, the definition of "public facility" in Civil Rights Law § 47 (2) does not include "establishments dealing with goods or services of any kind," as it does in the Executive Law (Executive Law § 292 [9]). Significantly, the legislative history of Civil Rights Law § 47 does not reveal that the definition of "public facility" was repeatedly expanded as it was in the Executive Law, which made it play such a persuasive role in *Matter of Cahill v Rosa* (*supra*).

In our view, the dissent has misapplied *Matter of Cahill v Rosa* (*supra*) for the further reason that the Court of Appeals there focused on the denial of health care by dental and medical providers to persons with disabilities solely on the basis of their disability. Plaintiff, unlike the patients in *Cahill*, has not alleged that she was denied treatment. In fact, she was there for that very purpose, and her headlong exit from the examining room was not directed by the defendant.

Accordingly, the order should be affirmed.

PINE, J. P. (Dissenting and voting to modify in an opinion in which BALIO, J., concurs.) We respectfully dissent in part. We agree with the majority that Supreme Court properly granted

defendant's motion to dismiss the second and third causes of action, alleging intentional and negligent infliction of emotional harm, for failure to state a cause of action. We conclude that the court erred, however, in granting defendant's motion to dismiss the first cause of action, alleging a violation of Civil Rights Law § 47, for failure to state a cause of action.

Plaintiff alleges in her complaint that she is a disabled person who uses a certified service dog to assist her; that on July 31, 1992, she went to the medical office of defendant, an orthopedic surgeon, concerning a medical problem; that her dog accompanied her to defendant's office; that she and her dog were taken to an examination room by a nurse in defendant's office; and that, when defendant entered the room, he began "screaming" at plaintiff "at the top of his voice" concerning the dog and demanded that the dog leave. The court dismissed the cause of action alleging a civil rights violation on the ground that the examination room of defendant's medical office is not a "public facility" within the meaning of Civil Rights Law § 47 (2).

Initially, it must be noted that, for purposes of defendant's motion to dismiss for failure to state a cause of action (*see,* CPLR 3211 [a] [7]), the allegations in the complaint are deemed true and are given the benefit of every possible inference (*see, Rovello v Orofino Realty Co.,* 40 NY2d 633, 634; *see also, Henning v Rando Mach. Corp.,* 207 AD2d 106, 110). The court did not treat this motion as one for summary judgment pursuant to CPLR 3211 (c). Here, the complaint may be read to allege that defendant demanded that the dog leave not only the examination room, but the entire office. Thus, for purposes of the motion, the court should not have limited its inquiry to whether the examination room is a public facility. The appropriate inquiry is whether defendant's medical office is a public facility.

Article 4-B of the Civil Rights Law affords certain rights to disabled people who are accompanied by guide, hearing and service dogs (*see,* Civil Rights Law § 47 *et seq.*). Civil Rights Law § 47 (1) provides that "[n]o person shall be denied admittance to and/or the equal use of and enjoyment of any public facility solely because said person is a person with a disability and is accompanied by a guide dog, hearing dog or service dog." Section 47 (2) provides that the term " 'public facility' *shall include,* but shall not be limited to, all modes of public and private transportation, all forms of public and private housing accommodations whether permanent or temporary, buildings to which the public is invited or permitted, including

those maintained by the state or by any political subdivision thereof, all educational facilities and institutions, including those maintained by the state or by any political subdivision thereof, all places where food is offered for sale, all theatres, including both live playhouses and motion picture establishments and *all other places of public accommodations*, convenience, resort, entertainment, or business to which the general public or any classification of persons therefrom is normally or customarily invited or permitted" (emphasis added). "Disability" is defined under section 47-b (5) as having the same meaning as provided for in Executive Law § 292 (21), part of the Human Rights Law. The terms "guide dog", "hearing dog" and "service dog" are defined as a dog properly harnessed that has been or is being trained by a qualified person to aid and guide a person with a disability (Civil Rights Law § 47-b [4]).

We conclude that defendant's medical office is a "place[ ] of public accommodation[ ] * * * to which the general public or any classification of persons therefrom is normally or customarily invited or permitted" (Civil Rights Law § 47 [2]). It is undoubtedly a place that serves patients who are members of the general public. Although section 47 does not define "place of public accommodation", article 4 of the Civil Rights Law, entitled "Equal Rights in Places of Public Accommodation and Amusement", contains a lengthy, expansive and nonexclusive list of places deemed places of public accommodation (*see,* Civil Rights Law § 40). Nothing in article 4-B suggests that public accommodation should be defined differently there than under article 4.

The sole reported case involving an interpretation of "public facility" under Civil Rights Law § 47 is *Perino v St. Vincent's Med. Ctr.* (132 Misc 2d 20), a 1986 decision of Supreme Court, Richmond County, upon which the court in the present case relied. There, the court held that a blind man with a seeing eye dog was not entitled under Civil Rights Law § 47 to have his dog with him in the hospital delivery room when his wife gave birth. The court determined that a hospital delivery room, as it is "commonly perceived", is not a place "to which the general public is normally invited or permitted" (*Perino v St. Vincent's Med. Ctr., supra,* at 21). The court also stated that, although a hospital hall, cafeteria or snack bar may be considered a public place, "the same cannot be said for other portions of the hospital wherein the usual functions of a hospital are carried out" (*Perino v St. Vincent's Med. Ctr., supra,* at 21). We note that the person excluded in *Perino* was not the patient.

Ten years after the *Perino* decision the Court of Appeals held in *Matter of Cahill v Rosa* (89 NY2d 14) that dental offices are places of public accommodation within the meaning of Executive Law § 292 (9). That statute does not expressly list "dental offices" within either the included or exempted categories.

In *Cahill,* complainant went to the dentist's office without an appointment for treatment of a cracked tooth. When he advised the dental assistant that he was awaiting test results to determine whether he was HIV positive, he was told that whether he would be treated would depend upon the test results and that he would not be treated unless the results were negative. The Court of Appeals noted that the broad and inclusive language of the prefatory sentence of Executive Law § 292 (9) and the legislative history of the statute indicate that the phrase " 'place of public accommodation' " is intended to be interpreted liberally (*see, Matter of Cahill v Rosa, supra,* at 21). It rejected the dentists' assertion that the phrase "stores and establishments dealing with goods or services of any kind" cannot be construed to include dental offices. The Court wrote that the phrase is ambiguous and that it previously had determined that the statute "generally applies to 'establishments' of any kind, implicitly interpreting that phrase as separate from and not modified or limited by the phrase 'wholesale and retail' " (*Matter of Cahill v Rosa, supra,* at 21, citing *Matter of United States Power Squadrons v State Human Rights Appeal Bd.,* 59 NY2d 401, 411, *rearg dismissed* 60 NY2d 682, 702). The Court adopted that interpretation and determined that "[d]entists' offices come within [the statutory] definition of places of public accommodation because they provide services to the public. Though they may be conducted on private premises and by appointment, such places are generally open to all comers" (*Matter of Cahill v Rosa, supra,* at 21).

The Court in *Cahill* noted that its construction of the statute "advances the statutory policy of protecting the civil rights necessary to enjoy a full and productive life" and that to hold otherwise "would impute to the Legislature approval of legal discrimination by dentists * * * on the basis of disability" (*Matter of Cahill v Rosa, supra,* at 23). The Court observed that "[n]o case has been drawn to our attention in which a private health care provider claimed that its practice was not a place of public accommodation within the meaning of the Human Rights Law until the advent of HIV and AIDS" (*Matter of Cahill v Rosa, supra,* at 23).

Although *Cahill* involves the interpretation of the Human Rights Law, while this case involves the interpretation of the

Civil Rights Law concerning a person with a disability accompanied by a guide dog, hearing dog or service dog, and although *Cahill* concerns dental care while this case concerns orthopedic care, we perceive no reason not to harmonize the two cases.

In our view, a dental office is analogous to an orthopedic surgeon's examination room. The Court held in *Cahill* that complainants were entitled to be treated notwithstanding the possibility that they were HIV positive. Presumably that treatment would have occurred in a private room in a dental office. The Court noted that, even if services were rendered on private premises and by appointment, such places are generally open to all comers. Thus, the Court viewed places of public accommodation far more broadly than did the court in *Perino*, wherein the court determined that halls, cafeterias and snack bars in a hospital possibly were public areas but that treatment areas were not. By analogy, here plaintiff was entitled to medical care, which presumably would have been provided in the examination room, not the waiting area, of the orthopedic surgeon's office. Even if we were to limit our inquiry to whether the orthopedic surgeon's examination room is a public facility within the meaning of Civil Rights Law § 47, we would conclude that it is.

Before the 1960 amendment to Executive Law § 292 (9), the term " 'place of public accommodation' " under the Executive Law was defined by reference to Civil Rights Law § 40. The 1960 amendment set forth a definition that was similar, but not identical, to the definition contained in Civil Rights Law § 40. Over the years, the definitions of both have been gradually expanded (*see generally, Gibbs v Arras Bros.,* 222 NY 332, 335-336, *rearg denied* 223 NY 559). The statutes undoubtedly share common roots and characteristics. The language in Civil Rights Law § 40 that is analogous to the relevant language in Executive Law § 292 (9) is "retail stores and establishments". We recognize that the statute being applied here is Civil Rights Law § 47, but in the absence of a more precise definition in section 47, it is reasonable to interpret that section in harmony with section 40. If a dental office is an establishment, so is an orthopedist's office. Surely the unqualified word "establishment" in Civil Rights Law § 40 is as broad as, if not broader than, "establishments dealing with goods or services of any kind" in Executive Law § 292 (9) and should be applied in construing the term in Civil Rights Law § 47.

Public policy also supports this result. The public policy of the State is to remove barriers to medical treatment for people

with disabilities. The *Cahill* decision reflects that policy by holding that access to dental care may not be denied to those who may be HIV positive. In our view, the policy is broad enough to cover access to health care for people with various disabilities. There is no reason to conclude that the Legislature intended to give less protection to a patient requiring a service dog than to one who may be HIV positive. The specters of hygiene, sanitation and safety raised by the majority are speculative, and the record is not developed sufficiently for us to comment on such concerns. The very paucity of reported cases under Civil Rights Law article 4-B strongly suggests that medical care has been rendered successfully for years to disabled persons requiring the assistance of specially trained dogs and that reasonable and practical solutions have been found. In our view plaintiff has alleged a cause of action for violation of Civil Rights Law § 47, and we would modify the order by reinstating that cause of action.

HAYES and CALLAHAN, JJ., concur with BOEHM, J.; PINE, J. P., and BALIO, J., dissent in a separate opinion by PINE, J. P.

Order affirmed, without costs.