[973 NE2d 162, 950 NYS2d 67]

In the Matter of NORTH SYRACUSE CENTRAL SCHOOL DISTRICT, Appellant, v NEW YORK STATE DIVISION OF HUMAN RIGHTS, Respondent.

In the Matter of ITHACA CITY SCHOOL DISTRICT, Appellant, v NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents.

Argued May 2, 2012; decided June 12, 2012

**POINTS OF COUNSEL**

*Law Firm of Frank W. Miller*, East Syracuse (*Frank W. Miller* and *Bryan Georgiady* of counsel), for appellant in the first

above-entitled proceeding. I. The North Syracuse Central School District's CPLR article 78 petition qualified for the "whole" jurisdictional exception to the administrative exhaustion rule. (*Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52; *Matter of First. Natl. City Bank v City of N.Y. Fin. Admin.*, 36 NY2d 87; *Matter of Nicholson v State Commn. on Jud. Conduct*, 50 NY2d 597; *Matter of East Meadow Union Free School Dist. v New York State Div. of Human Rights*, 65 AD3d 1342, 14 NY3d 710; *Matter of Student Press v New York State Human Rights Appeal Bd.*, 44 AD2d 558; *Matter of Newfield Cent. School Dist. v New York State Div. of Human Rights*, 66 AD3d 1314; *Matter of Tessy Plastics Corp. v State Div. of Human Rights*, 47 NY2d 789; *Matter of Union Endicott Cent. School Dist. v New York State Div. of Human Rights*, 85 AD3d 1523; *Anker Mgt. Corp. v State of N.Y., Div. of Human Rights*, 215 AD2d 706; *Matter of General Ry. Signal Co. v New York State Div. of Human Rights*, 73 AD2d 834.) II. Appellate Division case law omitting to consider the "whole" jurisdictional exception conflicts with this Court's previous holding in *Watergate II Apts. v Buffalo Sewer Auth.* (46 NY2d 52 [1978]). (*Matter of Newfield Cent. School Dist. v New York State Div. of Human Rights*, 66 AD3d 1314; *Matter of Bettina Equities Co. LLC v State of N.Y. Exec. Dept., State Div. of Human Rights*, 9 AD3d 296.)

*Bond, Schoeneck & King, PLLC*, Syracuse (*Jonathan B. Fellows* of counsel), for appellant in the second above-entitled proceeding. I. The holding of the Appellate Division ignores the plain language of Executive Law § 296 (4). (*Enright v Eli Lilly & Co.*, 77 NY2d 377; *Matter of East Meadow Union Free School Dist. v New York State Div. of Human Rights*, 65 AD3d 1342, 14 NY3d 710.) II. The proper standard of liability under Executive Law § 296 (4) for "permitting" racial harassment is "deliberate indifference." (*Davis v Monroe County Bd. of Ed.*, 526 US 629; *Gant ex rel. Gant v Wallingford Bd. of Educ.*, 195 F3d 134; *Saggio v Sprady*, 475 F Supp 2d 203; *Yap v Oceanside Union Free School Dist.*, 303 F Supp 2d 284; *Crispim v Athanson*, 275 F Supp 2d 240.) III. There is no basis for a compensatory damages award to a parent of a student under section 296 (4) of the Executive Law. (*Rich v CooperVision, Inc.*, 198 AD2d 860; *Spoon v American Agriculturalist*, 120 AD2d 857; *Belanoff v Grayson*, 98 AD2d 353; *Hart v Sullivan*, 84 AD2d 865; *Gilbert v Stanton Brewery, Inc.*, 295 NY 270; *Devito v Opatich*, 215 AD2d 714; *Cavello v Sherburne-Earlville Cent. School Dist.*, 110 AD2d 253.)

*Caroline J. Downey,* General Counsel, New York State Division of Human Rights, Bronx *(Michael K. Swirsky* of counsel), for respondent in the first above-entitled proceeding. I. The alleged victim's complaint, alleging race and disability discrimination against a student, is an "individual's complaint of discrimination" that the Human Rights Law authorizes the New York State Division of Human Rights to determine, subject to judicial review of the final disposition. (*Matter of Tessy Plastics Corp. v State Div. of Human Rights,* 47 NY2d 789; *Matter of Town of Huntington v New York State Div. of Human Rights,* 82 NY2d 783; *Matter of East Meadow Union Free School Dist. v New York State Div. of Human Rights,* 65 AD3d 1342, 14 NY3d 710; *Matter of Hurwitz v New York City Commn. on Human Rights,* 142 Misc 2d 214, 159 AD2d 417, 76 NY2d 702; *Watergate II Apts. v Buffalo Sewer Auth.,* 46 NY2d 52; *Anker Mgt. Corp. v State of N.Y., Div. of Human Rights,* 215 AD2d 706; *Matter of Ken Edrich Leather Accessories v New York State Div. of Human Rights,* 269 AD2d 334; *Matter of Newfield Cent. School Dist. v New York State Div. of Human Rights,* 66 AD3d 1314; *Matter of Union Endicott Cent. School Dist. v New York State Div. of Human Rights,* 85 AD3d 1523; *Matter of Lake Delaware Farms v Rosa,* 200 AD2d 819.) II. Executive Law § 296 (4) covers discrimination against public school students. (*Matter of East Meadow Union Free School Dist. v New York State Div. of Human Rights,* 65 AD3d 1342; *State Div. of Human Rights v Board of Coop. Educ. Servs.,* 98 AD2d 958, 62 NY2d 645; *Matter of Rizzo v New York State Div. of Hous. & Community Renewal,* 6 NY3d 104; *Matter of Crucible Materials Corp. v New York Power Auth.,* 50 AD3d 1353, 13 NY3d 223; *State Div. of Human Rights v Kilian Mfg. Corp.,* 35 NY2d 201; *Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights,* 35 NY2d 143; *Gaynor v Rockefeller,* 15 NY2d 120; *New York Inst. of Tech. v State Div. of Human Rights,* 40 NY2d 316; *Matter of Cahill v Rosa,* 89 NY2d 14; *Braschi v Stahl Assoc. Co.,* 74 NY2d 201.)

*Caroline J. Downey,* General Counsel, New York State Division of Human Rights, Bronx *(Michael K. Swirsky* of counsel), for New York State Division of Human Rights, respondent in the second above-entitled proceeding. I. The court below, examining the purpose of the Human Rights Law, correctly concluded that Executive Law § 296 (4) bars discrimination against public school students. (*Matter of East Meadow Union Free School Dist. v New York State Div. of Human Rights,* 65 AD3d 1342; *Braschi v Stahl Assoc. Co.,* 74 NY2d 201; *Matter of*

*Student Press v New York State Human Rights Appeal Bd.*, 44 AD2d 558; *Pratt v Indian Riv. Cent. School Dist.*, 803 F Supp 2d 135; *State Div. of Human Rights v Board of Coop. Educ. Servs.*, 98 AD2d 958, 62 NY2d 645; *Matter of New York Univ. v New York State Div. of Human Rights*, 84 Misc 2d 702, 49 AD2d 821; *Roosevelt Islanders for Responsible Southtown Dev. v Roosevelt Is. Operating Corp.*, 291 AD2d 40, 97 NY2d 613, *lv to appeal denied sub nom. Alternative Southtown Design Comm. v Roosevelt Is. Operating Corp.*, 98 NY2d 608; *State of Ohio ex rel. Fulton v Saal*, 239 App Div 420, 264 NY 465; *Matter of Jacob*, 86 NY2d 651; *Matter of Malpica-Orsini*, 36 NY2d 568.) II. As substantial evidence supported the New York State Division of Human Rights' findings that the Ithaca City School District failed to take reasonable action to address the racial harassment of the victim, the Third Department correctly confirmed the order after hearing with respect to liability. (*Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights*, 100 NY2d 326; *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176; *Matter of Mize v State Div. of Human Rights*, 33 NY2d 53; *Matter of Imperial Diner v State Human Rights Appeal Bd.*, 52 NY2d 72; *Matter of Club Swamp Annex v White*, 167 AD2d 400, 77 NY2d 809; *Matter of CUNY-Hostos Community Coll. v State Human Rights Appeal Bd.*, 59 NY2d 69; *Matter of State Div. of Human Rights [Granelle]*, 70 NY2d 100; *Lopez v Webster Cent. School Dist.*, 682 F Supp 2d 274; *Hayut v State Univ. of N.Y.*, 352 F3d 733; *Matter of Totem Taxi v New York State Human Rights Appeal Bd.*, 65 NY2d 300.) III. The New York State Division of Human Rights had the power to order the Ithaca City School District to pay compensatory damages to the victim's mother personally. (*Vig v New York Hairspray Co., L.P.*, 67 AD3d 140; *Spoon v American Agriculturalist*, 120 AD2d 857; *Cavello v Sherburne-Earlville Cent. School Dist.*, 110 AD2d 253, 67 NY2d 601; *Matter of Imperial Diner v State Human Rights Appeal Bd.*, 52 NY2d 72.)

*Schlather, Stumbar, Parks & Salk, LLP*, Ithaca (*Raymond M. Schlather* and *Diane V. Bruns* of counsel), for Amelia Kearney, respondent in the second above-entitled proceeding. I. The New York State Human Rights Law applies to a public school district. (*Koerner v State of N.Y., Pilgrim Psychiatric Ctr.*, 62 NY2d 442; *Matter of Cahill v Rosa*, 89 NY2d 14; *Matter of East Meadow Union Free School Dist. v New York State Div. of Human Rights*, 65 AD3d 1342; *Matter of Student Press v New York State Human Rights Appeal Bd.*, 44 AD2d 558; *Matter of Newfield Cent. School Dist. v New York State Div. of Human Rights*, 66 AD3d

1314; *Bovich v East Meadow Pub. Lib.*, 16 AD3d 11; *Pratt v Indian Riv. Cent. School Dist.*, 803 F Supp 2d 135; *State Div. of Human Rights v Board of Coop. Educ. Servs.*, 98 AD2d 958; *Martin v Curran*, 303 NY 276; *Matter of Graves*, 171 NY 40.) II. The Appellate Division's conclusion that the Ithaca City School District had violated the Human Rights Law applies the appropriate standard of review and is supported by substantial evidence in the record. (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176; *Matter of Matteo v New York State Div. of Human Rights*, 306 AD2d 484; *Matter of Club Swamp Annex v White*, 167 AD2d 400, 77 NY2d 809; *Matter of State Div. of Human Rights [Granelle]*, 70 NY2d 100; *Matter of CUNY-Hostos Community Coll. v State Human Rights Appeal Bd.*, 59 NY2d 69; *Gant ex rel. Gant v Wallingford Bd. of Educ.*, 195 F3d 134; *Saggio v Sprady*, 475 F Supp 2d 203; *Crispim v Athanson*, 275 F Supp 2d 240; *Yap v Oceanside Union Free School Dist.*, 303 F Supp 2d 284.) III. The award of damages to Amelia Kearney is both authorized under the Human Rights Law and supported by substantial evidence in the record. (*Hart v Sullivan*, 84 AD2d 865, 55 NY2d 1011; *Belanoff v Grayson*, 98 AD2d 353; *Spoon v American Agriculturalist*, 120 AD2d 857; *Rich v Cooper-Vision, Inc.*, 198 AD2d 860; *Gilbert v Stanton Brewery, Inc.*, 295 NY 270; *Devito v Opatich*, 215 AD2d 714; *Cavello v Sherburne-Earlville Cent. School Dist.*, 110 AD2d 253, 67 NY2d 601, 647; *Bovsun v Sanperi*, 61 NY2d 219; *Matter of Sherwood Terrace Apts. v New York State Div. of Human Rights*, 61 AD3d 1333; *Matter of Price v Southwest Airlines, Inc.*, 66 AD3d 1267, 14 NY3d 858, 15 NY3d 800.) IV. Pursuant to the State Administrative Procedure Act, the Ithaca City School District has waived any objection to the New York State Division of Human Rights' jurisdiction. (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176; *Matter of Stefanis v New York State Div. of Human Rights*, 244 AD2d 342; *Matter of Farina v State Liq. Auth.*, 20 NY2d 484; *Matter of Nostima Foods v State Liq. Auth.*, 71 NY2d 648.)

*Lambda Legal Defense and Education Fund, Inc.*, New York City (*Thomas W. Ude, Jr.*, and *Hayley J. Gorenberg* of counsel), for Advocates for Children of New York, Inc. and others, amici curiae in the first above-entitled proceeding. The Human Rights Law applies to public school districts. (*Matter of Cahill v Rosa*, 89 NY2d 14; *Matter of Rizzo v New York State Div. of Hous. & Community Renewal*, 6 NY3d 104; *Matter of Crucible Materials Corp. v New York Power Auth.*, 50 AD3d 1353, 13 NY3d 223; *Matter of Board of Higher Educ. of City of N.Y. v Carter*, 16

AD2d 443, 14 NY2d 138; *Pocantico Home & Land Co., LLC v Union Free School Dist. of Tarrytowns*, 20 AD3d 458; *Mohonk Trust v Board of Assessors of Town of Gardiner*, 47 NY2d 476; *State Div. of Human Rights v Board of Coop. Educ. Servs.*, 98 AD2d 958; *Matter of East Meadow Union Free School Dist. v New York State Div. of Human Rights*, 65 AD3d 1342; *Matter of Perrenod v Liberty Bd. of Educ. for Liberty Cent. School Dist.*, 223 AD2d 870; *Woods v Rondout Val. Cent. School Dist. Bd. of Educ.*, 466 F3d 232.)

*Eric T. Schneiderman, Attorney General*, New York City (*Cecelia C. Chang, Leslie B. Dubeck, Barbara D. Underwood, Spencer Freedman, Kristen Clarke* and *Kayla Gassmann* of counsel), for State of New York, amicus curiae in the first and second above-entitled proceedings. The Human Rights Law protects public school students from discrimination. (*Sega v State of New York*, 60 NY2d 183; *Ward v Hasbrouck*, 169 NY 407; *Simar v Canaday*, 53 NY 298; *Matter of Board of Higher Educ. of City of N.Y. v Carter*, 14 NY2d 138; *Williams v Williams*, 23 NY2d 592; *People v Kern*, 75 NY2d 638; *Koerner v State of N.Y., Pilgrim Psychiatric Ctr.*, 62 NY2d 442; *Matter of East Meadow Union Free School Dist. v New York State Div. of Human Rights*, 65 AD3d 1342; *Hayut v State Univ. of N.Y.*, 127 F Supp 2d 333; *State Div. of Human Rights v Board of Coop. Educ. Servs.*, 98 AD2d 958.)

*Lambda Legal Defense and Education Fund, Inc.*, New York City (*Hayley J. Gorenberg* and *Thomas W. Ude, Jr.*, of counsel), for Advocates for Children of New York, Inc. and others, amici curiae in the second above-entitled proceeding. The New York Human Rights Law protects students attending public schools against discrimination by and harassment in their school districts. (*Matter of Cahill v Rosa*, 89 NY2d 14; *Matter of Board of Higher Educ. of City of N.Y. v Carter*, 16 AD2d 443, 14 NY2d 138; *Matter of Rizzo v New York State Div. of Hous. & Community Renewal*, 6 NY3d 104; *Matter of Crucible Materials Corp. v New York Power Auth.*, 50 AD3d 1353, 13 NY3d 223; *Pocantico Home & Land Co., LLC v Union Free School Dist. of Tarrytowns*, 20 AD3d 458; *Mohonk Trust v Board of Assessors of Town of Gardiner*, 47 NY2d 476; *State Div. of Human Rights v Board of Coop. Educ. Servs.*, 98 AD2d 958; *Matter of East Meadow Union Free School Dist. v New York State Div. of Human Rights*, 65 AD3d 1342; *Matter of Perrenod v Liberty Bd. of Educ. for Liberty Cent. School Dist.*, 223 AD2d 870; *Woods v Rondout Val. Cent. School Dist. Bd. of Educ.*, 466 F3d 232.)

■■■■■■■■

*Jay Worona*, Latham, and *Aileen Abrams*, for New York State School Boards Association, Inc., amicus curiae in the second above-entitled proceeding. The court below erred when it determined that Executive Law § 296 (4) is applicable to the Ithaca City School District and the State Division of Human Rights has jurisdiction to enforce that law in public schools. (*Roslyn Union Free School Dist. v Barkan*, 16 NY3d 643; *Lanza v Wagner*, 11 NY2d 317; *People ex rel. Elkind v Rosenblum*, 184 Misc 916, 269 App Div 859, 295 NY 929; *Gunnison v Board of Educ. of City of New York*, 176 NY 11; *Matter of Perrenod v Liberty Bd. of Educ. for Liberty Cent. School Dist.*, 223 AD2d 870; *Woods v Rondout Val. Cent. School Dist. Bd. of Educ.*, 466 F3d 232; *Rosner v Metropolitan Prop. & Liab. Ins. Co.*, 96 NY2d 475; *TC v Valley Cent. School Dist.*, 777 F Supp 2d 577; *Matter of East Meadow Union Free School Dist. v New York State Div. of Human Rights*, 65 AD3d 1342; *Matter of Excellus Health Plan v Serio*, 2 NY3d 166.)

### OPINION OF THE COURT

PIGOTT, J.

At issue on these appeals is whether a public school district is an "education corporation or association" as contemplated by Executive Law § 296 (4). We conclude that it is not, and, therefore, the New York State Division of Human Rights (SDHR) lacks jurisdiction to investigate complaints against public school districts under that provision.

## Procedural Background

The public school students in these proceedings filed complaints with the SDHR, claiming that their respective school districts engaged in an "unlawful discriminatory practice" under article 15 of the Executive Law (Executive Law § 290 *et seq.* [Human Rights Law]) by permitting their harassment on the basis of race and/or disability (Executive Law § 296 [4]).

Both school districts commenced a CPLR article 78 proceeding seeking a writ of prohibition barring the SDHR from investigating the complaints on the ground that a public school district is not an "education corporation or association" as contemplated by Executive Law § 296 (4). Supreme Court in *Matter of North Syracuse Cent. School Dist.* granted the petition on that ground; Supreme Court in *Matter of Ithaca City School Dist.* held otherwise, concluding that a school district is an "education corporation" that the SDHR could investigate.

At this point, the procedural paths of the appeals diverged. The SDHR appealed in the *North Syracuse Cent. School Dist.* matter, and the Appellate Division, Fourth Department, reversed, holding that the SDHR's exercise of jurisdiction should have been challenged first during administrative review, not in a CPLR article 78 proceeding (83 AD3d 1472 [4th Dept 2011]).

The Ithaca City School District had withdrawn its appeal to the Appellate Division, Third Department. The parties proceeded to a hearing on the discrimination complaint before an administrative law judge, who concluded, among other things, that the district had permitted discriminatory conduct and awarded complainant and her mother $500,000 each. The Commissioner of Human Rights reduced each award to $200,000. The Ithaca City School District thereafter commenced a CPLR article 78 proceeding seeking vacatur and annulment of the SDHR's determination.

Supreme Court annulled the SDHR's determination, holding that it lacked the authority to hear and determine complaints against the district because a school district is not an "education corporation" under section 296 (4). The Appellate Division, Third Department, with one Justice dissenting, modified the mother's award by reducing it to $50,000 and otherwise confirmed the determination. Relying on the legislative findings set forth in Executive Law § 290 (3) that the Human Rights Law was intended "to eliminate and prevent discrimination . . . in educational institutions," the Appellate Division held that "public school districts are among the 'educational institutions' over which [the] SDHR has jurisdiction and that Executive Law § 296 (4) is the statutory mechanism by which it can seek to eliminate any discrimination by such school districts" (87 AD3d 268, 273 [3d Dept 2011]). This Court granted leave in both appeals.

## Analysis

Executive Law § 296 (4) provides, in relevant part, that

> "[i]t shall be an unlawful discriminatory practice for an *education corporation or association* which holds itself out to the public to be non-sectarian and exempt from taxation pursuant to . . . [RPTL article 4] . . . to permit the harassment of any student or applicant, by reason of his race . .. . [or] disability" (emphasis supplied).

The parties acknowledge that there is no definition of "education corporation or association" in the Human Rights Law.

Given the absence of a definition, one Appellate Division looked to the General Construction Law for guidance (*see Matter of East Meadow Union Free School Dist. v New York State Div. of Human Rights*, 65 AD3d 1342, 1343 [2d Dept 2009] [holding that because a school district is a "municipal corporation" and therefore a "public corporation" under the General Construction Law, it could not be an "education corporation" within the meaning of Executive Law § 296 (4)]). That approach is a legitimate one given that the General Construction Law is "applicable to *every statute* unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended" (General Construction Law § 110 [emphasis supplied]). On the other hand, application of the General Construction Law is problematic, however, because the provision at issue in the Executive Law was enacted 15 years prior to General Construction Law §§ 65 and 66—the provisions upon which the Appellate Division relied on in *East Meadow Union Free School Dist.*—and the SDHR, relying on the exceptions contained in General Construction Law § 110, contends that the Legislature never meant for those definitions to apply to Executive Law § 296 (4). We need not address whether the General Construction Law is applicable here, however, because there is independent basis, supported by legislative history, for our conclusion that a public school district is not an "education corporation or association."

The SDHR asks this Court to adopt the Appellate Division's rationale in *Matter of Ithaca City School Dist.* and liberally construe the "general purpose" of the Human Rights Law, which is to "eliminate and prevent discrimination . . . in educational institutions" (Executive Law § 290 [3]), and conclude that a public school district is an "education corporation or association." That argument, however, overlooks the basic premise that there must first be an underlying directive in the statute before this Court can apply such a construction. And it is evident from the legislative history that the term "education corporation or association," the origins of which can be traced to the Tax Law, refers to only private, non-sectarian entities that are exempt from taxation under RPTL article 4.

The demarcation between tax exemption for public and certain private property dates back to 1896, when the Legislature enacted Tax Law § 4. That section expressly differentiated

the tax-exempt status for "[p]roperty of a municipal corporation of the state held for a public use" (Tax Law § 4 [3], as added by L 1896, ch 908), i.e., school district property, from the tax-exempt status of

> "[t]he real property of a *corporation or association* organized exclusively for the moral or mental improvement of men or women, or for religious, bible, tract, charitable, benevolent, missionary, hospital, infirmary, educational, public playground, scientific, literary, bar association, library, patriotic, historical or cemetery purposes, or for the enforcement of laws relating to children or animals, or two or more such purposes and used exclusively for carrying out thereupon one or more of such purposes" (Tax Law § 4 [7] [emphasis supplied]).

Subdivisions (3) and (7) of Tax Law § 4 plainly had different aims, with the latter addressing the tax-exempt status of private property ostensibly used to carry out a public purpose (*see* Problems Relating to Taxation and Finance, 1938 Report of New York State Constitutional Convention Committee, vol 10, at 198, 201-205). Indeed, the Legislature enacted Tax Law § 4 (7) to prohibit the granting of special real property tax exemptions to individual *corporations*, and to ensure that such corporations received such an exemption only if they used their property to provide a public service (*id.* at 201-205).

In 1933, the Legislature retained the language set forth in Tax Law § 4 (7), renamed it Tax Law § 4 (6) (L 1933, ch 470, § 3), and in 1935 added the following proviso: "No *education corporation or association* that holds itself out to the public to be non-sectarian and exempt from taxation pursuant to the provisions of this section shall deny the use of its facilities to any person otherwise qualified, by reason of his race, color or religion" (L 1935, ch 852, § 1 [emphasis supplied]). The language was added after the Legislature received a report from the New York State Commission for the Revision of Tax Laws (Tax Commission), which, in part, addressed tax exemptions for government-owned and privately-owned real property (1935 NY Legis Doc No. 62, at 35-59). The exemptions discussed in that report were embodied in Tax Law § 4 (*id.* at 40 n 15).

In its report, the Tax Commission observed that "[m]ost of the exemptions of privately owned real property result[ed] from the enumeration and definition of specific public uses," meaning

that tax exemptions for private property were granted because the exempt property was being "used in doing what the government might otherwise be compelled to do, in fulfilling a responsibility which it has definitely undertaken," or, what the Legislature deemed a *"necessary* public purpose" (1935 NY Legis Doc No. 62, at 44). Significantly, as relevant to this appeal, under the heading *"Privately Owned Property Devoted to a Public Use,"* the Tax Commission listed a number of private entities referenced in now-former Tax Law § 4 (6) (*id.* at 44-48 [emphasis supplied]). The similarities between the types of privately-owned exempt property delineated in the Tax Commission's Report and Tax Law § 4 (6) are striking and hardly coincidental.

For instance, the Tax Commission, utilizing terms almost identical to those used in Tax Law § 4 (6), listed as tax-exempt the following *private* property owned by *private* organizations: religious property ("organized exclusively for religious, bible, tract, or missionary purposes, or for the moral or mental improvement of men or women"); charitable property ("owned by associations organized exclusively for charitable purposes"); fraternal and benevolent property (which "relieve[s] the state of part of its traditional burden of caring for the poor, aged, and helpless"); hospital property (which "protect[s]" the public health, "one of the most important of the necessary public purposes of the state"); occupational association property (property of "[b]ar association" and use of county fair grounds for agricultural exhibitions); and miscellaneous property (cemeteries and property owned by "patriotic" organizations) (*compare* Tax Law § 4 [6], *with* 1935 NY Legis Doc No. 62, at 44-48).

The most significant item demarcated in the Tax Commission's list of *private* property subject to tax exemption was "[e]ducational [p]roperty," to which the Tax Commission devoted an entire section (1935 NY Legis Doc No. 62, at 44). The Tax Commission noted that "[r]eal property owned by educational institutions is exempt only to the extent that the educational purpose is 'exclusively' carried out 'thereupon,' " quoting from Tax Law § 4 (6) that "real property of a corporation or association organized exclusively for . . . educational . . . purposes" is tax exempt if "used exclusively for carrying out thereupon" such a purpose (1935 NY Legis Doc No. 62, at

44).[1] Indeed, it was acknowledged after the enactment of Tax Law § 4 (6) that "[w]ith the assumption by the public authority of the function of public education, the basis for the exemption of . . . non-profit making private institutions which carried an elementary and secondary educational work changed," and the State "recognized . . . that [such] institutions were performing not merely a *desirable* public purpose but even a *necessary* one—a purpose which the government itself was serving" (Problems Relating to Taxation and Finance, 1938 Report of New York State Constitutional Convention Committee, vol 10, at 217). Because the government derived a benefit from the work of these institutions, i.e., it was relieved of the expense of providing education to students of private institutions, "[t]he least that the public authority could do as a recompense of the institutions for the services they were rendering and the money they were saving the authority was to free these institutions from taxation" (*id.*).

Given the foregoing, the "educational" property delineated in Tax Law § 4 (6) plainly referred to privately-owned property that was tax-exempt because it provided a public service; consequently, the use of the term "education corporation or association" in that same provision plainly referred to private, non-sectarian entities that owned "educational" property utilized for a public purpose. Although the corporations and associations delineated in Tax Law § 4 (6) provide different services, they share one thing in common: their property is privately owned and it is afforded tax-exempt status because those corporations or associations perform a public service that the government recognizes as worthy of special tax treatment (1935 NY Legis Doc No. 62, at 44-48).

In light of the legislative history surrounding the enactment of Tax Law § 4 (6), and given the circumstances under which the Legislature transferred the term "education corporation or association" from Tax Law § 4 (6) to Executive Law § 296 (4), we reject the SDHR's assertion that "education corporation or association" applies to a public school district. In 1951, the

---

1. The Tax Commission likewise stated that tax-exempt "[e]ducational [p]roperty" also included "[p]roperty belonging to *associations* organized for scientific, literary, public playground and library purposes" (*compare* 1935 NY Legis Doc No. 62, at 44, *with* Tax Law § 4 [6]). Such language distinctly tracks the language of Tax Law § 4 (6) as it existed in 1935, and such associations were plainly meant to be included as "education . . . association[s]."

Legislature created the State Commission Against Discrimination[2] to "eliminate and prevent discrimination in *employment* because of race, creed, color or national origin" (Executive Law §§ 290, 293, as added by L 1951, ch 800 [emphasis supplied]). The following year the law was amended granting the State Commission the authority to also "eliminate and prevent discrimination . . . in places of public accommodation, resort or amusement" (Executive Law § 290, as amended by L 1952, ch 285, § 1). As pertinent here, in 1958, the Legislature amended Executive Law § 296 (4) as follows:

> "It shall be an unlawful discriminatory practice for an *education corporation or association* which holds itself out to the public to be non-sectarian and exempt from taxation pursuant to the . . . provisions of [RPTL article 4] to deny the use of its facilities to any person otherwise qualified, by reason of his race, color or religion" (L 1958, ch 960, § 23 [emphasis supplied]).

This language was taken almost verbatim from Tax Law § 4 (6).

The term "education corporation or association" is retained in Executive Law § 296 (4) to this day. The Human Rights Law is silent as to what constitutes an "education corporation or association," but the fact that such language was taken directly from the Tax Law and moved to Executive Law § 296 (4) bespeaks the Legislature's intention that the term was to have the same meaning in the Executive Law as it did in former Tax Law § 4 (6). Moreover, the use of the phrase "non-sectarian" was plainly included in Executive Law § 296 (4) to carve out an exception for parochial schools, while reserving for the SDHR the jurisdiction to investigate section 296 (4) complaints against private, non-sectarian education corporations or associations.

Public school districts are different from private, non-sectarian institutions and fall outside the purview of the SDHR's jurisdiction relative to section 296 (4) claims. To be sure, school districts own tax-exempt property and serve a public purpose, but they do so as part of a public system, not a private one. And a public school district receives tax-exempt status by virtue of the fact that it is public, so there would never be any need for it to "hold[ ] itself out to the public to be non-sectarian" as, say, a private school.

---

2. This name was changed to the New York State Division of Human Rights in 1968.

The vicious attacks to which these students were subjected are deplorable, and our holding is not to be interpreted as indifference to their plight, since the merits of their underlying discrimination claims are not at issue on these appeals. Nor does our holding leave public school students without a remedy. In addition to potential remedies under federal law, public school students may file a complaint with the Commissioner of Education (*see* Education Law § 310). Moreover, in 2010, the Legislature enacted the "Dignity for All Students Act," establishing article 2 of the Education Law, designed "to afford all [public school] students an environment free of any harassment that substantially interferes with their education, regardless of the basis of the harassment, and free of discrimination based on actual or perceived race, color, weight, national origin, ethnic group, religion, disability, sexual orientation, gender, or sex" (Sponsor's Mem, Bill Jacket, L 2010, ch 482, at 21, 2010 McKinney's Session Laws of NY, at 2051-2052; *see also* Education Law §§ 10-18 [eff July 1, 2012]). Although the SDHR lauded this legislation by acknowledging that it "addresses a myriad of harassment and discrimination issues that arise within a school context and its goals comport[ ] with the goals of the [Human Rights Law]," noticeably absent from its correspondence was any indication that it had previously handled similar claims of that nature arising in public schools (Letter from NY St Div of Human Rights, July 22, 2010, Bill Jacket, L 2010, ch 482, at 34).

## Conclusion

Because a public school district is not an "education corporation or association" under Executive Law § 296 (4), the SDHR lacked jurisdiction to investigate the complaints filed by the students in these appeals.[3]

Accordingly, in *Matter of North Syracuse Cent. School Dist.*, the order of the Appellate Division should be reversed, with costs, and the resettled judgment of Supreme Court reinstated. In *Matter of Ithaca City School Dist.*, the order of the Appellate Division should be reversed, with costs, and the order of Supreme Court reinstated.

---

**3.** Given our holding, we do not address the separate jurisdictional issue raised by the North Syracuse Central School District that the Appellate Division erred in concluding that it should have exhausted its administrative remedies before commencing its CPLR article 78 proceeding.

CIPARICK, J. (dissenting). The Equal Protection Clause of the New York State Constitution explicitly prohibits both public and private discrimination (see NY Const, art I, § 11). Legislation implementing this provision states "[t]he opportunity to obtain education . . . without discrimination . . . is . . . recognized as and declared to be a civil right" (Executive Law § 291 [2]). Further, Executive Law § 296 (4) provides that

> "[i]t shall be an unlawful discriminatory practice for an education corporation or association which holds itself out to the public to be non-sectarian and exempt from taxation pursuant to the provisions of article four of the real property tax law to deny the use of its facilities to any person otherwise qualified, or to permit the harassment of any student or applicant, by reason of his race, color, religion, disability, national origin, sexual orientation, military status, sex, age or marital status."

Today, the majority curtails the breadth of this statute by limiting the definition of "education corporation or association" to only private schools and exempting public school districts from the jurisdiction of the State Division of Human Rights (SDHR). Because I believe that exclusion of public school children from the full protection of the Human Rights Law contradicts the plain language of the statute, the Legislature's declared purpose and New York's fundamental public policy against discrimination, I respectfully dissent.

## I.

### Ithaca City School District

During the 2005-2006 school year, petitioner's daughter (E.K.), a 12-year-old African-American student attending public school in Ithaca, was repeatedly subjected to racial insults, threats and physical harm from a group of white male students. Among other things, the boys made comments to E.K. such as: "Do you mind if I call you my nigger?" and "we shoot niggers like you in the woods." One student told E.K. that he had a hunting rifle with her name on it. The majority of the incidents occurred on the school bus. Petitioner repeatedly sought help from school officials. Despite acknowledging that there was a "racial tidal wave" at the school and that E.K.'s school bus was a "hell hole," officials only meted out ineffective one or two day suspensions on the perpetrators and refused to ban the offending students from the school bus.

Because of the harassment, E.K.'s grades fell and her mental health deteriorated. Petitioner filed a complaint with the SDHR. After a public hearing before an administrative law judge, it was determined that the school district had violated Executive Law § 296 (4) by permitting the repeated harassment of a student on the basis of race. Specifically, the division found that the school district "repeatedly chose a course of action which both put the interests of the white male perpetrators ahead of the interests of the black female student, and was repeatedly shown to be, and acknowledged to be, ineffective in stopping the discriminatory conduct." The administrative law judge ordered the school district to pay compensatory damages to E.K. and her mother in the amount of $500,000 each. The SDHR affirmed the findings, but lowered both damage awards to $200,000. The school district challenged the determination. Supreme Court determined that the SDHR lacked jurisdiction to investigate public schools. The Appellate Division reversed holding that the SDHR did indeed have jurisdiction over public schools (*see Matter of Ithaca City School Dist. v New York State Div. of Human Rights*, 87 AD3d 268 [3d Dept 2011]).

## North Syracuse Central School District

The underlying complaint in this case was filed by the mother of a 14-year-old African-American student (L.T.), who attended public school in North Syracuse. The mother complained that her child was targeted for abuse because of her race and had been called names such as "gorilla" and "fat black bitch." The SDHR investigated and interviewed school officials who confirmed that L.T. had been targeted by bullies but that the harassment was based on personal hygiene and weight as opposed to race and that the terms "gorilla" and "fat black bitch" were not "race based insults." The SDHR found probable cause to support a violation of Executive Law § 296 (4) and ordered a full public hearing on the issue. The school district filed a CPLR article 78 petition in Supreme Court challenging the SDHR's jurisdiction. Supreme Court granted the petition, finding that the SDHR had no jurisdiction over the school district. The Appellate Division reversed, holding that the school district was required to exhaust its administrative remedies, including raising its jurisdictional challenge to the SDHR prior to commencing an article 78 proceeding (*Matter of North Syracuse Cent.*

*School Dist. v New York State Div. of Human Rights*, 83 AD3d 1472 [4th Dept 2011]).[1]

## II.

The majority has determined, through an analysis of tax law statutory history, that the term "education corporation or association," as used in Executive Law § 296 (4), is intended to cover only private schools and accordingly provide protection for a very small percentage of students in the state. However, such an interpretation is contradicted by a plain reading of the statute, which we have long recognized as the clearest indication of legislative intent (*see Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). Executive Law § 296 (4) prohibits discrimination by any "education corporation or association which holds itself out to the public to be non-sectarian and exempt from taxation pursuant to the provisions of article four of the real property tax law." It is uncontroverted that the term "education corporation or association" is not defined within the Executive Law. It is beyond cavil that public school districts are corporations organized for educational purposes (*see* NY Const, art X, § 5) and public schools hold themselves out to the public as non-sectarian and are exempt from taxation pursuant to article 4 of the RPTL (*see* RPTL 408). Section 296 (4) brings within the protection of the Human Rights Law private educational institutions, which had not previously been covered. That it used identical language as the RPTL does not work to now exclude public school districts. Thus, a plain reading of the statute indicates that the Legislature intended to confer authority to the SDHR over both public and private schools and the historical statutory analysis performed by the majority runs counter to the plain language of the statute.[2]

Moreover, in interpreting the statute, we also examine the purpose of a statute in determining legislative intent (*see Matter of Sutka v Conners*, 73 NY2d 395, 403 [1989]). Interpreting

---

**1.** It should be noted that the statutory interpretation question was fully litigated below, although the Appellate Division did not reach it in dismissing the school district's petition.

**2.** That the Legislature intended to cover public schools is evident in that on the same day that it enacted Executive Law § 296 (4) (*see* L 1958, ch 960, § 23) it also amended the RPTL, adding article 4, which expressly included public school districts (*see* L 1958, ch 959). In fact, the Legislature, in the preamble to the act that enacted section 296, stated that the purpose of the act is "to harmonize certain provisions [of the Executive Law] with the real property tax law" (L 1958, ch 960).

section 296 (4) as encompassing both public and private schools is in keeping with the overarching purpose of article 15 of the Executive Law—the Human Rights Law—which is:

> "to assure that *every individual* within this state is afforded an equal opportunity to enjoy a full and productive life and that the failure to provide such equal opportunity, whether because of discrimination, prejudice, intolerance or *inadequate education*, training, housing or health care not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants" (Executive Law § 290 [3] [emphasis added]).

This statute also provides for the creation of the SDHR in order to

> "encourage programs designed to insure that *every individual* shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the state; to encourage and promote the development and execution by all persons within the state of such state programs; to eliminate and prevent discrimination in employment, in places of public accommodation, resort or amusement, in *educational institutions*, in public services, in housing accommodations, in commercial space and in credit transactions and to take other actions against discrimination as herein provided; and the division established hereunder is hereby given general jurisdiction and power for such purposes" (*id.* [emphasis added]).

This language clearly indicates that "every individual"—including every school-age child—has a right to adequate education and that the SDHR has the authority, on behalf of "every individual," to prevent discrimination in "educational institutions."[3] The majority's limitation of the SDHR's jurisdiction to only private schools does little to promote the broad purposes of the Human Rights Law, which is to provide a bias-free education for every individual.

---

**3.** Notably, the statute uses the term "educational institutions" here as opposed to, as the majority argues, the more restrictive term "education corporation or association."

Furthermore, by its own statutory language, "[t]he provisions [of the Human Rights Law] shall be construed liberally for the accomplishment of the purposes thereof" (Executive Law § 300) and we have consistently embraced a liberal construction of the Human Rights Law in order to accomplish its stated purpose (*see Matter of Cahill v Rosa*, 89 NY2d 14, 20 [1996] [holding that a private dentist's office is a place of public accommodation]). By adopting a strict and limiting interpretation of the statute, the majority is forgoing its duty to make sure that the Human Rights Law is implemented in such a way as to give every individual an opportunity for a bias-free education (*see City of Schenectady v State Div. of Human Rights*, 37 NY2d 421, 428 [1975] ["it is the duty of courts to make sure that the Human Rights Law works and that the intent of the Legislature is not thwarted by a combination of strict construction of the statute and a battle with semantics"]). It is antithetical to the purpose of the Human Rights Law to exempt public schools from its mandate. We have noted that discrimination is "all the more invidious" when practiced by state run entities (*Koerner v State of N.Y., Pilgrim Psychiatric Ctr.*, 62 NY2d 442, 448 [1984]). The clear and expressed intent of the Human Rights Law is to protect "every individual" in the state from the evils of discrimination. As argued by the State, nothing in the text of the Human Rights Law compels a reading, as that employed by the majority, that would exclude public school districts from the coverage of section 296 (4) and its remedial purpose. It is implausible that the Legislature intended to exempt public schools and the thousands of children who attend these schools from the protection of the Human Rights Law and the oversight of the SDHR.

Thus, I would affirm both Appellate Division orders.

Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Judge CIPARICK dissents and votes to affirm in a separate opinion in which Chief Judge LIPPMAN and Judge JONES concur.

In each case: Order reversed, etc.